MARY KRANICH and Others, Suing on Behalf of Themselves and of All Other Stockholders of KRANICH & BACH, Similarly Situated, Respondents, *v.* LOUIS P. BACH and Others, Appellants.

First Department, May 2, 1924

Corporations — officers — representative action to compel accounting as to alleged illegal and excessive salaries and to compel declaration of dividends — increases in salaries voted by directors were ratified at stockholders' meeting — minority stockholder cannot complain — evidence does not show that services of certain officers were unnecessary — action of directors in passing dividends in order to build up surplus will not be interfered with.

In a representative action by minority stockholders to compel an accounting by the officers and directors of their corporation for alleged illegal and excessive salaries paid to certain officers pursuant to resolution passed by said officers in their capacity of directors and to compel the declaration of dividends, the minority stockholders are not entitled to an accounting, since it appears that the alleged illegal and excessive increases voted by the directors were approved at stockholders' meetings and, therefore, though they may have been illegal when voted by the directors, the action of the stockholders themselves in approving or ratifying them forecloses a minority stockholder from raising any objection to their validity.

Moreover, in addition to the ratification by the stockholders of the acts of the board of directors in voting increases in salaries the record does not sustain the findings by the court that the services of certain of the officers were unnecessary to the extent of being outside of the business judgment and discretion of the directors.

The action by the board of directors in passing dividends during the years 1917 to 1920 for the purpose of building up a surplus will not be interfered with by the court since that matter was within the discretion of the directors and there is no evidence to show bad faith or fraud on their part in failing to declare dividends.

APPEAL by the defendants, Louis P. Bach and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on or about the 1st day of May, 1923, upon the decision of the court rendered after a trial at the New York Special Term.

*H. A. and C. E. Heydt* [*Nathan L. Miller* of counsel; *Herman A. Heydt* and *E. Chase Crowley* with him on the brief], for the appellants.

*Bickerton, Wittenberg & Fleisher* [*Joseph P. Bickerton, Jr.,* of counsel; *Philip Wittenberg* and *Sidney R. Fleisher* with him on the brief], for the respondents.

FINCH, J.:

This is an action, brought by minority stockholders suing on behalf of themselves and all other stockholders similarly situated, to compel an accounting and declaration of dividends, the plaintiffs also claiming that salaries of certain of the officers were paid pursuant to resolutions voted on by said officers in their capacity of directors, and hence were illegal, or if legal, that said salaries were excessive. The chief grievance of the plaintiffs is that no dividends have been paid since 1916; and the real purpose of the action is to compel the declaration of dividends, the other relief sought being incidental.

Upon the trial the duties of the various officers were inquired into for the purpose of showing that their salaries were excessive. No claim was made in the complaint that the services of any of said officers were unnecessary. The learned court went further than the complaint demanded, and further than the facts warranted, in holding certain of these officers to be entitled to no compensation whatsoever for services rendered to the corporation over many years to the knowledge of all the parties, without any such objection prior to the trial of this action.

As to the salaries paid prior to the increases voted at the meeting held February 14, 1922, the action of the directors was ratified when all of the plaintiffs, represented either in person or by proxy, voted for ratification of all of the proceedings of the corporation during the years 1903, 1904, 1905, 1906, 1907, 1908, 1909, 1911, 1912, 1916 and 1919. For the years 1913, 1914, 1915, 1917, they all ratified except Alvin Kranich, who took no part. For the year 1918, all of the plaintiffs ratified except Alvin Kranich and Mary Kranich, who took no part. The record does not seem to contain evidence of a single complaint from a stockholder in regard to either superfluous employees or excessive salaries, made to the corporation or its officers either at a stockholders' meeting or otherwise, during all these years. At the stockholders' meeting in 1904 the following resolution was passed: " That all the acts of the directors of this company since the annual election in February, 1903, with reference to the transactions, resolutions, payments of money, and the general conduct of the affairs of this company, and the

same are hereby ratified, approved and confirmed." Similar resolutions were passed in each of the years noted. This action was commenced in 1921. Even if the facts, as contended for by the plaintiffs, were sustained by the record, it is now too late for these plaintiffs to question the salaries paid as above. Furthermore, it is to be noted that this is a family corporation, and it is a fair inference that the members knew each other intimately and presumably had a more intimate knowledge of the corporation and its affairs than would be the case in a large corporation where the stockholders are widely scattered and know nothing of what is transpiring. All of the stockholders are chargeable with notice of what takes place at meetings of the stockholders regularly convened, whether they appear or not. In *Planten* v. *National Nassau Bank* (174 App. Div. 254, 260) the court said: " * * * But assuming that the resolution was adopted prior to the commencement of the action it is to be assumed, I presume, that the plaintiff is chargeable with notice thereof, for it is alleged that the meeting of the shareholders was duly convened, and whether he appeared or not, it would be a reasonable inference that he had notice of the meeting and was chargeable with knowledge of what took place."

Under the foregoing circumstances it is clear that the plaintiffs cannot now question the validity of the numbers of officers employed or the payment of salaries made. In *Lewis* v. *Matthews* (161 App. Div. 107, 112), where the ratification was only for one year and where some of the stockholders actively objected, the court said: " * * * I think it entirely clear that the action of the stockholders in ratifying the action of the board of directors in fixing the salaries of the president and treasurer for the year 1912 was a complete ratification of the action of the directors, and justified the officers of the company in paying the salaries so provided for, and estopped the corporation or the minority stockholders from questioning the validity of the payments or the right of the officers to receive the salaries thus formally fixed."

In *Continental Insurance Co.* v. *New York & Harlem R. R. Co.* (187 N. Y. 225, 238) the court said: "Assuming that the fact that the majority of the directors of the Harlem were also directors of the Central rendered the agreement made by the two boards for an apportionment of the interest reduction between the two companies voidable at the election of the Harlem stockholders, as doubtless was the case, nevertheless the agreement was not absolutely void, but could be ratified by the action of such stockholders, in which case it would become binding upon the company."

Moreover, in addition to the ratifications by the stockholders,

the record does not sustain the court's finding that the services of certain of the corporation's officers were superfluous and unnecessary to the extent of being outside of the business judgment and discretion of those managing the corporation. The defendant Louis P. Bach has served in various capacities for thirty-six years, entering the employment of the founders of the business in 1885. Upon the incorporation he became secretary, in 1902 he was made treasurer, and in 1920 became president. He has been directed to refund all salary paid him in the years 1916 to 1920, as well as an increase of salary after he became president, upon the ground that the president could have performed, in addition to his own duties, the services which this defendant was performing as treasurer. The duties of this defendant, however, were not confined to any one department. He has grown up in the business and knew it in all its details, which apparently are considerable. It is clear that the services of such a man, now the head of the corporation, were of substantial value. As treasurer he was receiving an annual salary of $10,400, and continued to receive this sum as president until 1922, when it was increased to $15,000.

The defendant Jacques B. Schlosser has been directed to return the salary paid him during the past seven years, with interest, and the corporation enjoined from paying him any further salary. The facts are analogous to those in the case of the defendant Bach. Schlosser entered the employ of the corporation in 1897, starting as an apprentice and working his way through, learning the business in detail and serving in whatever manner he could be useful. In 1902 he became vice-president. In 1903 his salary was $6,500 a year, in 1909 it was increased to $7,800 a year, which salary continued until 1922, when it was increased to $13,000.

The defendant Helmuth Kranich, secretary, was directed to return the salary paid him during the past seven years, and the corporation enjoined from paying him any further salary. He was in the employ of the corporation since 1892. From 1902 to 1909 he received $6,500 a year, and from 1909 to 1922, $7,800, increased to $13,000 in 1922. Like the others he gave all his time, knowledge and ability to the business. He looked after the sales end of the business in all its ramifications, and in addition passed on all pianos that were sent out, as to construction, finish and tone, being particularly expert as to the latter. His name, being the same as the founder's, was also of value to the corporation as having O. K.'d the instruments, each of which bore his personal certificate of approval.

The judgment appealed from also directs the repayment by the defendants Bach, Schlosser and Kranich of an increase of $4,420

in the salary paid to Louis H. Maier, factory superintendent, pursuant to a contract entered into between the corporation and said Maier in 1922 (subsequent to the commencement of this action). Maier theretofore had been receiving a salary of $8,580, which the court found was reasonable. He had invented and patented devices in connection with player pianos, of which the corporation had the exclusive use on a royalty basis in addition to his salary. His contract terminated in 1922, and he requested additional compensation, claiming he could obtain same elsewhere. Maier, although a director, did not vote upon the question of the new contract. As noted, all the foregoing matters were within the business judgment of those charged with the management of the corporation, and a court will not substitute its judgment for that exercised when no further facts have been shown than are disclosed in this record.

As to the increased compensation, this was voted at a stockholders' meeting at which 2,808 shares of stock out of a total issue of 4,000 were voted, and the only opposition was by Victor Kranich, holder of 5 shares. Said meeting was held February 14, 1922, which is subsequent to the commencement of the action. While equity may adapt the remedy to the conditions existing at the trial (*Kilbourne* v. *Supervisors, etc.*, 137 N. Y. 170), yet in the case at bar the facts do not warrant the granting of the relief prayed for. There had been no increase of salary to Bach in twenty years, or to Schlosser and Kranich in thirteen years. Conditions in the corporation's business have changed, owing to the introduction of mechanical players and the change in demand to grand instead of upright models; competition has grown keener and the business broadened. The employees have kept pace with these changing conditions. After long service an employee's services necessarily become more valuable by the acquisition of experience.

While these considerations are cited to show some of the reasons for the result reached, a reading of this record discloses that if this court were free to substitute its judgment for the judgment of those charged with that duty, no increase would have been granted, except perhaps to Maier. If a wise and prudent business policy dictated a withholding of dividends, it would seem that the officers should have been willing to make some sacrifices as well as the stockholders. Too selfish and ruthless a policy on the part of the officers does not usually bring that success which is given by the co-operation of all. Moreover, it appears usually that where the number of officers and the salaries paid them are fitting and fair to all concerned, the declaration and amount of dividends satisfactorily adjust themselves.

In *Lewis* v. *Matthews* (*supra*) Presiding Justice INGRAHAM said. " The corporation acted by its board of directors in fixing these salaries, and such action of the board of directors was ratified and adopted by a large majority of the stockholders, the only stockholder objecting being the plaintiff, who was the owner in his own right of but a small minority of the stock. The question was one of the internal management of the corporation — whether the officers whom the corporation had elected should receive compensation for the services that they rendered to the corporation, and the amount of compensation to be paid. It was a question to be determined by the corporation itself, in which neither the People of the State nor the public generally were at all interested, and the stockholders as those interested in the disposition of the property of the corporation were entitled to determine what, if any, compensation should be paid to the officers."

In so far as directing the declaration of dividends is concerned, there is no justification for the interference of the court. The corporation began business in 1890 with a paid surplus of $350,000. At the date of the action this surplus amounted to $353,075. From 1902 to 1916 the directors paid out an average of fourteen per cent annually in dividends. It had been the policy to pay out practically the entire earnings in dividends. When earnings were insufficient, dividends had been paid out of surplus. In 1916 commenced a period of depression in the business, following the war, and no dividends were declared during the years 1917 to 1920, although some $16,000 a year was carried over to surplus. It is apparent that the directors could not continue indefinitely the practice of paying dividends out of surplus, and the very experience they were having demonstrated the wisdom of building up a surplus, or at least in holding their surplus intact so as to insure the continuation of the business as a going concern. Said surplus was not a cash surplus, but consisted in large part of property used by the corporation in its business, in the form of inventories, bills receivable, etc. The testimony is that in order to have paid dividends during the years 1916–1920 the company would have had to borrow money. Had the defendants been less generous in the past in the distribution of dividends, they would have been better able to make payments during the period of depression through which they were passing. The amounts carried to surplus were just sufficient to keep the same intact. Moreover, the testimony is that conditions in the trade were changing so that greater capital was necessary; new machinery had to be installed, and player pianos and grand pianos were in demand instead of uprights, requiring greater outlay and investment of capital. The matter

was well within the discretion of the directors, and there is no evidence to show bad faith on their part. As was said in *Hastings* v. *International Paper Co.* (187 App. Div. 404): " 'It is a well settled principle that whether or not dividends shall be paid, and \* \* \* is primarily to be determined by the directors, and there must be bad faith or a clear abuse of discretion on their part to justify a court of equity in interfering.' "

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, SMITH, MERRELL and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.