Rudolph BEUC, Jr., et al., Appellants,

v.

Benjamin A. RETHEMEYER et al.,
Respondents.

No. 57504.

Supreme Court of Missouri,
Division No. 1.

March 11, 1974.

Edwin Rader and Paul H. Schramm, M. Harvey Pines, Schramm & Morganstern, Clayton, for appellants.

Huger & Cramer, Bernard J. Huger, William O. Cramer, Bernard C. Huger, St. Louis, for respondents.

LAURANCE M. HYDE, Special Commissioner.

Shareholder's derivative action seeking repayment to Rethemeyer Coffee Company of $55,000 for claimed excessive salary paid to Arthur Rethemeyer and for $50,000 punitive damages for plaintiffs because of payment of the claimed excessive salary to Arthur. Judgment was for defendants and plaintiffs have appealed. We have jurisdiction because of the amount involved since appeal was filed here December 17, 1971. We affirm.

The company's business is mainly importing, buying, blending, roasting and selling coffee and peanuts. It was incorporated in 1931. Benjamin Rethemeyer has been president since 1944, his father August Rethemeyer was president from 1931 to 1944. Benjamin was 74 at the time of the trial. Benjamin's son Arthur Rethemeyer had worked in the business since 1938 when he finished high school. He was 50 at the time of the trial. The company had 400 shares, Benjamin's sister Minnie Rethemeyer owned 95 shares and Lilian Beuc owned 70 shares. They with their brother Benjamin were the only directors of the company prior to Lilian's

death. Minnie said she was secretary and treasurer. Both were employed by the company until Lilian died in 1967. They were paid hourly wages. Benjamin and his wife owned 223 shares at the time of the trial, having previously transferred two shares to Arthur and his wife. Lilian Beuc's stock was valued at $198.22 per share for federal estate tax.

In 1960 Arthur's annual salary was $7,000. It was increased $500 each year up to 1963 when it was $9,000. Thereafter until time of the trial salaries, sales and net profits were as follows:

| Year | Paid to Father | Paid to Son | Gross Sales of Corporation | Net Profit of Corporation |
|------|------|------|------|------|
| 1964 | $ 9,000.00 | $ 9,500.00 | $190,248.52 | $5,792.49 |
| 1965 | 15,000.00 | 12,000.00 | 285,095.67 | 9,396.19 |
| 1966 | 20,000.00 | 20,000.00 | 281,683.27 | 8,392.21 |
| 1967 | 15,000.00 | 20,000.00 | 274,977.39 | 6,582.54 |
| 1968 | 15,000.00 | 16,500.00 | 261,478.81 | 3,199.73 |
| 1969 | 15,000.00 | 15,000.00 | 268,714.73 | 6,016.65 |
| 1970 | 15,000.00 | 15,000.00 | 260,161.38 | 9,362.69 |

Plaintiffs say the court erred in finding for defendants claiming the evidence supports a finding that salaries paid to Arthur were excessive, unjust and unreasonable. Plaintiffs sought to show Arthur's main and primary employment was roasting coffee and peanuts and that any other tasks performed by him were peripheral to his primary job of roasting. They say that $9,000 per year was the most Arthur should be paid, basing this on testimony of the owner of another company that he paid a roaster that amount. However, this witness estimated Arthur's worth to defendant company to be $20,000 to $25,000 per year based on his knowledge of defendants' business and what Arthur did.

Defendants' evidence showed that Arthur did much more for the business than roasting. He bought, processed and sold coffee and peanuts. Both were perishable and it was important to turn out fresh merchandise. Arthur got most of the accounts that were buying their peanuts. Peanuts get stale and they pride themselves that they turn them out when they are not more than 24 hours old. Arthur made deliveries in a station wagon he owned. Within the last five years they had obtained a new customer (Selena Company) which took 5,000 pounds of coffee a week. Benjamin said Arthur knew the Selena accounts better than he did. It was also shown that the gross sales were over $260,000 annually from 1965 to 1970 while they were less than $165,000 in 1962 and 1963. Arthur worked most holidays and quite often on Saturdays and Sundays to get coffee and peanuts to customers. He said he had not had Thanksgiving off in 20 years; and had not had a vacation or sick leave in 10 years. Benjamin said Arthur took on more work than he did and was paid more for that reason. The company operated with very few employees. Arthur said year to year his duties got heavier. Benjamin handled the corporate books and records, prepared all financial statements, took care of the banking, financed the business and fixed the compensation of all of the employees. He and Arthur are the only two salaried people in the corporation.

The Rethemeyer Company was mainly a two-man operation. Either one (Benjamin or Arthur) "can start at the top and go down to the basement and handle any angle or any job that is in that company" and "have been doing that for a number of years." Defendants emphasize that Benjamin said in a deposition that Arthur got

more salary than he did because Arthur had a larger family. At the trial, he said he made that statement in anger at the length of questioning at the deposition; that the salaries depended on sales and that some years, when Arthur got more than he did, he [Benjamin] didn't put in full time. After Lilian Beuc died in 1967 her son Rudolph Beuc, Jr. became a director in her place in 1968. When Minnie Rethemeyer retired in 1969 Benjamin's wife Clara became a director. She was replaced by Arthur in 1970 after this action was filed.

This case was tried by the court without a jury. Rule 73.01(d), V.A.M.R., provides that in such cases: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In this case, the opportunity of plaintiffs' witnesses to know all the duties, activities and efforts of Arthur in the business is rather limited and we consider that the court was justified in believing the testimony of Benjamin and Arthur about this. Furthermore, while Lilian and Minnie were directors it is not claimed they made any complaint about the salary authorized for Arthur. See Langlois v. B. F. Merchant Inv. Co., 101 Colo. 438, 73 P.2d 1385 (1937); Sommers v. Apalachicola Northern R. Co., 85 Fla. 9, 96 So. 151 (1922); Lorren v. Baroda Mfg. Co., 334 Mich. 405, 54 N.W.2d 702 (1952); and Kranich v. Bach, 209 App. Div. 52, 204 N.Y.S. 320 (1924); see also 16 A.L.R.2d 497 annotation; 19 Am.Jur.2d, Corporations § 1425, p. 818. Plaintiffs cite Saigh v. Busch, 396 S.W.2d 9 (Mo.App. 1965) mainly as to their right to bring a stockholders derivative action. However that action, complaining of remuneration received by the corporation's president, was decided against the suing stockholders. Plaintiffs also cite 19 Am.Jur.2d, Corporations § 1272 as to the duty of directors to act in good faith in the interest of the stockholders and not for their own personal interest. However, in this case, the corporation was operated at a profit during the years involved and the appraised value of Lilian's stock for federal estate tax shows it acquired a substantial value as it was operated. The record herein does not show the amount of dividends.

Plaintiff also cites Binz v. St. Louis Hide and Tallow Co., 378 S.W.2d 228 (Mo.App.1964) and Ruetz v. Topping, 453 S.W.2d 624 (Mo.App.1970). Binz holds that persons, who as directors participated in setting their own salaries, had the burden of showing the salaries paid them were justified by the work they performed. Ruetz followed the same rule. The citation 19 Am.Jur.2d, Corporations § 1272, p. 679 states the fiduciary duty of a director. However, Arthur was not a director during the period in question while plaintiff Minnie Rethemeyer was. So was her sister Lilian Beuc until her death in 1967 and it appears that salaries were fixed at the beginning of each year. Lilian and Minnie each owned a substantial number of shares. Arthur did not become a director until 1970. His salary had been reduced to $15,000 the year before that. Thus prior to the commencement of this action the rule of Binz and Ruetz would not apply to him. Furthermore, it was shown that Arthur was offered a $15,000 salary to go with another coffee company. In any event, there was evidence herein reviewed from which the court could reasonably find that the salaries paid Arthur were justified by the work he performed and we must consider that this was the view of the trial court.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.