**Benjamin A. COOK et al.,
Plaintiffs-Appellees,**

v.

**AVIEN, INC., et al.,
Defendants-Appellees,**

**James F. Pritchard, Defendant-Appellant.**

**Benjamin A. COOK et al.,
Plaintiffs-Appellants,**

v.

**AVIEN, INC., et al.,
Defendants-Appellees.**

**Nos. 77–1106 and 77–1107.**

United States Court of Appeals,
First Circuit.

March 28, 1978.

Steven J. Brooks, Boston, Mass., with whom John C. Foskett and Glass & Brooks, Boston, Mass., were on brief, for James F. Pritchard.

Charles Donelan, Worcester, Mass., with whom George B. Sanders, Jr., Bowditch & Lane, and Samuel R. DeSimone, Worcester, Mass., were on briefs, for Benjamin A. Cook et al.

Leo A. Weiss, pro se.

Clinton T. Crolius, Boston, Mass., with whom Barry M. Portnoy, Victor Bass, John G. Short, and Sullivan & Worcester, Boston, Mass., were on brief, for Robert A. Weaver, Jr., et al.

Robert J. Pearl, Rochester, N. Y., with whom Martin, Dutcher, Mousaw, Vigdor & Reeves, Rochester, N. Y., was on brief, for Pierre A. Alsina.

Edwin J. Carr, Boston, Mass., with whom Rich, May, Bilodeau & Flaherty, Boston, Mass., was on brief, for Roy E. Marquardt et al.

Before COFFIN, Chief Judge, CAMP-BELL and LAY,* Circuit Judges.

LAY, Circuit Judge.

These appeals arise from claims brought under the Securities Act of 1933,[1] the Securities Exchange Act of 1934,[2] and Securities Exchange Commission Rule 10b–5,[3] to recover the purchase price of certain securities. In September of 1968 Benjamin A. Cook, Rachel C. Lowe, Gerald J. Eydenberg, Donald A. Conte, Peter A. Consiglio, and Advance Coatings Company purchased Avien, Incorporated six percent convertible subordinated notes. Avien was declared a bankrupt in 1976.

The district court entered judgments for the individual plaintiffs under Rule 10b–5

---

* Of the Eighth Circuit, sitting by designation.

1. 15 U.S.C. §§ 77a et seq.

2. 15 U.S.C. §§ 78a et seq.

3. 17 C.F.R. § 240.10b–5 (1977).

against James F. Pritchard, a stock broker and intermediary on the note sales, based on alleged fraudulent, material omissions made in connection with the sale of the notes. Pritchard has appealed these judgments asserting various defenses including the statute of limitations. The purchasers of the notes have appealed the dismissal of their claims against Leo A. Weiss—president, executive director and the chief operating officer of Avien—Avien's Board of Directors—Pierre A. Alsina, Roy E. Marquardt, Robert A. Weaver, Jr., Robert A. Wiener, and Leo A. Weiss—and Robert Weaver, Jr. & Associates, Incorporated, a consulting firm. The plaintiffs assert that the district court erred in denying recovery against all of the defendants under §§ 12(1),[4] 12(2),[5] and 17,[6] of the 1933 Act and against Weiss and Avien's Board of Directors under § 10(b) of the 1934 Act.[7]

We find that, although violations may have been made out against Weiss and Pritchard under §§ 12(1) and 12(2), the one year statute of limitations in § 13 of the 1933 Act[8] bars plaintiffs' claims against both defendants. We also affirm the trial court's finding that only Pritchard's actions constituted violations of § 10(b) and Rule 10b–5; we nonetheless vacate the judgment against Pritchard and remand for further proceedings on the sole question of whether the statute of limitations had run on the § 10(b) claims against Pritchard.[9]

*Facts.*

Avien, a manufacturer of jet aircraft fuel consumption measuring devices, achieved spectacular growth during the late 1950s. The company, however, subsequently experienced financial difficulties and underwent reorganization pursuant to Chapter XI of the Bankruptcy Act in 1964.[10] In order to ensure stability Avien thereafter moved toward diversification by acquisition of, and merger with, other corporations. In March of 1968 Avien made its first acquisition when it purchased the Davis-Edwards Pharmacal Corporation.

To further its expansion effort Avien commissioned Robert Weaver, Jr. & Associates to prepare an elaborate brochure referred to as the Avien Fact Report.[11] The report was to be used to acquaint other companies interested in merger or acquisition with Avien. The report presented an optimistic projection of both Avien's and Davis-Edwards' earnings and growth potentials.

In June of 1968 M. Timothy Sullivan and Pritchard, both stockbrokers, approached Weaver. They told Weaver that they had a group of "discretionary account" customers who were looking for investment opportunities in private placements of securities. Knowing that Avien was short of working capital, Weaver told Weiss of the brokers' interest. Weiss thereafter negotiated with Pritchard and Sullivan the possibility of a sale of $500,000 of six percent convertible subordinate notes to the brokers' customers. Sullivan and Pritchard were to receive a five percent commission on the sale.

Weiss, through Weaver, furnished the brokers with several items concerning Avien including the company's quarterly and annual reports and a copy of the Fact Report. Sullivan and Pritchard were told that the Fact Report was confidential and for their use only.[12]

---

4. 15 U.S.C. § 77*l* (1).

5. 15 U.S.C. § 77*l* (2).

6. 15 U.S.C. § 77q.

7. 15 U.S.C. § 78j(b).

8. 15 U.S.C. § 77m.

9. We also find the plaintiffs' allegations under § 17 of the 1933 Act to be insubstantial.

10. 11 U.S.C. §§ 701 et seq.

11. Aiding corporations in developing merger and acquisition programs was the primary business of Weaver Associates.

12. Although Pritchard denied that he was told that the Fact Report was confidential, the testimony of several witnesses at the trial supported the trial court's determination that Pritchard was told not to release the Fact Report to others.

On August 13, 1968, Weiss wrote a memorandum to Avien's Board of Directors which expressed a pessimistic view of the company's overall economic progress. The memorandum told of a declining price structure for Davis-Edwards products, discussed the company's immediate need for cash, disclosed management problems at Davis-Edwards, and revealed adverse Food and Drug Administration reports on Davis-Edwards' methods of operation.

Sullivan and Pritchard met with Weiss to discuss the note purchase on August 15, 1968. At that time Weiss took the brokers on a tour of some of the company's facilities, told them of at least one FDA concern with Davis-Edwards' method of operation, and analyzed the profit structure of Davis-Edwards utilizing varying product mix scenarios. He did not give his August 13 confidential report to the brokers, though he may have discussed some of its factual contents with them. Weiss' attitude toward the future success of Avien was optimistic during these discussions.

Avien's Board of Directors met on August 26, 1968, to discuss the sale of the notes. At the meeting Weiss told the other directors that he had furnished complete financial information to the brokers.

On September 11, 1968, Weiss wrote another memorandum to the Avien Board in which he discussed serious personnel problems at Davis-Edwards and noted the immediate need for the $500,000 proceeds from the notes to offset continued cash drains at Avien and Davis-Edwards. The notes were issued on September 13, 1968, and the proceeds paid to Avien by Sullivan and Pritchard less their commission. Included among the purchasers of Avien's notes were Cook, Lowe, Eydenberg, Consiglio, Conte and Advance Coatings Company.

*Section 12(1).*

■ The purchasers first urge that the district court erred in denying recovery against all of the sellers of the notes under § 12(1) of the 1933 Act. Under this section the seller of a security is liable to a purchaser if the sale violates the registration provisions of § 5 of the Act.[13] Sales may, however, be exempted from registration by § 4(2)[14] of the Act if a private offering is made in which the purchasers (1) are limited in number, (2) are sophisticated, and (3) have a relationship with the issuer enabling them to command access to information that would otherwise be contained in a registration statement. *See, e. g., Doran v. Petroleum Management Corp.*, 545 F.2d 893, 899–900 (5th Cir. 1977); *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 687–89 (5th Cir. 1971). If securities are sold without full disclosure or effective access to significant information, there is no exemption, the registration provisions of § 5 are violated, and the seller is liable under § 12(1). Although the district court found that the securities were not exempt from registration under § 4(2), the court determined that the § 12(1) claims were barred because the one year statute of limitations in § 13 of the Act had not been tolled by any fraudulent act of the defendants.[15] We agree but for reasons differing from those presented by the trial court.

We hold that, under the explicit language of § 13, the limitations period runs from the date of the violation irrespective of whether the plaintiff knew of the violation. *See Gridley v. Cunningham*, 550 F.2d 551, 552–53 (8th Cir. 1977); *Mason v. Marshall*, 412 F.Supp. 294, 299 (N.D.Tex.1974), aff'd, 531

Plaintiffs do not contend that the unauthorized release of the Fact Report constituted a Rule 10b–5 violation by Pritchard. The trial court found that:

It appears from the testimony of Pritchard that plaintiffs Cook and Eydenberg gave the Fact Report a very cursory examination, and that Conte kept it overnight. There is no evidence that Lowe or Consiglio ever saw the Fact Report.

**13.** 15 U.S.C. § 77e.

**14.** 15 U.S.C. § 77d(2).

**15.** Section 13 provides that:
    No action shall be maintained to enforce any liability created under section . . . 77l (1) [§ 12(1)] of this title, unless brought within one year after the violation upon which it is based.
    15 U.S.C. § 77m.

F.2d 1274 (5th Cir. 1976); *Ferland v. Orange Groves of Florida, Inc.*, 377 F.Supp. 690, 703 (M.D.Fla.1974); *Shuman v. Sherman*, 356 F.Supp. 911, 912–13 (D.Md.1973); *Moerman v. Zipco, Inc.*, 302 F.Supp. 439, 445 (E.D.N.Y.1969), *aff'd*, 422 F.2d 871 (1970); 3 L. Loss, Securities Regulation ch. 11C(1)(f), at 1742 (2d ed. 1961). It is undisputed that at the time plaintiffs filed their complaints more than one year had elapsed since their purchase of the notes. Under the circumstances, plaintiffs cannot pursue their § 12(1) claims.

*Section 10(b).*

Section 10(b) of the 1934 Act and Rule 10b–5 prohibit the use of any manipulative or deceptive device or contrivance in the sale of securities. Under the Supreme Court's decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), more than negligent conduct is required to trigger a private cause of action under this section.

The district court found insufficient evidence to conclude that Weiss knowingly or recklessly withheld material information from the purchasers. The purchasers, however, assert on appeal that Weiss acted with reckless disregard of the truth when he failed to disclose information contained in the August 13, 1968, memorandum.

■ Assuming without deciding that reckless conduct can result in a § 10(b) liability,[16] we agree with the trial court that the evidence does not support a finding that Weiss' conduct was intentional within the requirements of the Act.

The Seventh Circuit has recently defined reckless conduct under § 10(b) as

a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977), *quoting Franke v. Midwestern Oklahoma Development Authority*, 428 F.Supp. 719, 725 (W.D. Okla.1976).

It has been held that reckless conduct "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence." *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977). *See also SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 868 (2d Cir. 1968) (en banc) (Friendly, J., concurring), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The record reveals that Weiss held extensive discussions with the brokers concerning Avien and its new acquisition, Davis-Edwards. Weiss testified that he felt much of the information discussed in his August 13 memorandum was potentially inaccurate and not worthy of further disclosure. In view of the standard defining reckless conduct and in light of the facts developed we accept the trial court's determination that Weiss' conduct was not reckless.

■ The trial court did, however, find that Pritchard acted fraudulently in misrepresenting Avien Corporation to the purchasers, and held Pritchard liable under § 10(b). Since the record provides adequate support for the conclusion that Pritchard had the requisite intent for § 10(b) liability we affirm the trial court's determination.

On the basis of the trial record it could be reasonably concluded that Weiss had communicated material facts about Davis-Edwards and Avien to Pritchard (the gross uncertainty of available financial data about Davis-Edwards, the company's difficulties with the FDA, Davis-Edwards' failure to meet predicted gross volume figures, and its management and inventory control problems, for example); that Pritchard knew he had free access to additional significant data, but sought none; and that Pritchard passed on none of the information that he did have to the purchasers, contenting himself instead with offering a most

**16.** The Supreme Court specifically reserved this question in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

general caveat about the uncertainty inherent in investments while at the same time presenting an optimistic forecast of the company's future. Pritchard's testimony is often unclear and contradictory; his own statements evidence little concern with the soundness of his clients' investments, and less concern with affording them complete information about the company in which they were investing. On the basis of this record, viewed in conjunction with the demeanor evidence available to the trial court, we cannot hold that the district court's finding that Pritchard possessed the requisite intent under § 10(b) was clearly erroneous.[17]

*Section 12(2).*

■ Plaintiffs also contend that Weiss and Avien's Board of Directors violated § 12(2) of the 1933 Act in the sale of the notes. By the express terms of § 12(2), unlike Rule 10b–5, liability may be based on negligent omissions. 15 U.S.C. § 77*l*(2). *See Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 956 (S.D.N.Y.1975). Liability under § 12(2) attaches if it is established that: (1) the defendant made a false or misleading statement of material fact or failed to state a material fact necessary in order to make the statement not misleading; (2) the plaintiff did not know of the untruth or omission; and (3) the defendant knew, or in the exercise of reasonable diligence could have known, of the untruth or omission. *Alton Box Board Co. v. Goldman, Sachs & Co.,* 560 F.2d 916 (8th Cir. 1977).

■ The district court ruled that the information that Weiss admittedly did not disclose was not material, and therefore exonerated Weiss from liability under § 12(2). Our examination of the record, however, brings us to a conclusion contrary to that reached by the district court.

Although Weiss discussed the company's earnings picture with Pritchard, his discussion failed to fully disclose material facts which would have been important to an investor in making his or her investment decision. For example, Weiss failed to reveal a serious price deterioration in Davis-Edwards products which was according to the August 13 memorandum, occurring on a "pretty much 'across the board' basis." Furthermore, Weiss did not reveal the potential seriousness of the company's FDA violations, the possibility that Avien would seek to divest itself of Davis-Edwards, and the extent of serious management problems at Davis-Edwards. Finally, Weiss neglected to reveal an acute cash shortage plaguing the company in September of 1968, before the closing. Some of this information, even that not purely factual but evaluative, may have been information that a reasonably prudent investor would want to have before making an investment decision. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). *Cf. Marx v. Computer Sciences Corp.,* 507 F.2d 485, 489–92 (9th Cir. 1974) (holding that an earnings forecast could be a material fact); *G & M, Inc. v. Newbern,* 488 F.2d 742, 745–46 (9th Cir. 1973) (holding that an opinion could be actionable under § 10(b) where there was a gross disparity between prediction and fact).

■ Full disclosure within the remedial spirit of § 12(2) requires that the investor be permitted independently to evaluate these facts; it is not for the seller to rationalize them away.[18] *See SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 852 (2d Cir. 1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). *Cf. Alton Box Board Co. v. Goldman, Sachs & Co.,*

---

17. Because of our ultimate disposition of the case, it is unnecessary here to consider the liability of Avien's Board of Directors as controlling persons under § 20 of the 1934 Act, 15 U.S.C. § 78t. *See* 15 U.S.C. § 78t(a).

18. The record is clear that the other directors were informed by Weiss that full financial disclosure was made to the purchasers via Pritch-

ard. Under these circumstances, assuming the directors to be controlling persons under § 15 of the 1933 Act, 15 U.S.C. § 77*o*, as the trial court found them to be, we cannot say the district court's finding that the directors acted in good faith and therefore were not liable under § 15 is clearly erroneous. *See Demarco v. Edens,* 390 U.S. 836, 841–42 (2d Cir. 1968).

*supra.* Weiss' memo to the directors did not discount these facts as he would have this court do. A finding of materiality is especially compelling when viewed in the light of Weiss' superior knowledge of Avien's financial affairs.[19]

But we need not rule definitively on this question, since even if Weiss' conduct would support the finding of a § 12(2) violation we find that plaintiffs' claims under § 12(2) are barred by the statute of limitations, and that a serious question as to whether the § 10(b) claim is similarly barred exists.

*The Statute of Limitations.*

█ The statute of limitations for § 12(2) is prescribed by § 13 of the Act, which provides:

> No action shall be maintained to enforce any liability created under section . . . 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . .

15 U.S.C. § 77m.

Section 10(b) of the Securities Exchange Act of 1934, however, has no statutorily prescribed limitations period. Federal courts must therefore look to the limitations period applicable to the analogous cause of action under state law to determine the period limiting actions brought under the section and its correlative rule.

*Ernst & Ernst v. Hochfelder, supra* at 210 n. 29, 96 S.Ct. 1375. *See also Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir. 1975). This court has ruled that the two year period set by Massachusetts law for certain personal tort suits, Mass.Gen.Laws ch. 260, § 2A, applies to such securities fraud actions. *Janigan v. Taylor,* 344 F.2d 781, 783 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965).[20]

█ Despite the application of a state statute of limitations, federal courts apply federal common law to determine when the cause of action accrues, and when the statute is tolled. *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir. 1977); *Tomera v. Galt, supra; Janigan v. Taylor, supra* at 784; *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 84–85 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Under federal law, the doctrine of fraudulent concealment operates to toll the statute of limitations

> where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part . . . until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

*Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875) (footnote omitted).

---

**19.** The securities acts place a special burden on insiders. *Kohler v. Kohler Co.,* 319 F.2d 634 (7th Cir. 1963). The insider must

> scrupulously disclose to outsiders those material facts about a corporation's business which in reasonable and objective contemplation might affect the value of the corporation's stock or securities and which the insiders should reasonably believe are unknown to the outsider.

*Id.* at 642.

Furthermore, insiders are required to

> exercise reasonable and due diligence not only in ascertaining what is material as of the time of the transaction but in disclosing fully those material facts about which the outsider is presumably uninformed and which would, in reasonable anticipation, affect his judgment.

*Id.*

> These responsibilities of the insider arise from the intent of Congress that all members of the investing public should be subject to identical market risks . . . .

*SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 852 (2d Cir. 1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

**20.** This section of the Mass.Gen.Laws has been revised to make a three year period limit the institution of certain tort actions, Mass.Gen. Laws ch. 260, § 2A, as amended by Mass.Acts 1973, ch. 777, § 1, but explicitly applies only to causes of action arising after January 1, 1974, and so does not alter the court's analysis of the limitations aspect of this case.

*See also Janigan v. Taylor, supra.* Even without affirmative acts on the part of defendants, then, a federal cause of action will accrue at the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains. *Arneil v. Ramsey, supra; Hilton v. Mumaw,* 522 F.2d 588, 602 (9th Cir. 1975); *Vanderboom v. Sexton,* 422 F.2d 1233, 1240–41 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 143 F.Supp. 323, 329 (D.Del.1956), *aff'd,* 244 F.2d 902 (3d Cir. 1957).

The doctrine of fraudulent concealment is the common law counterpart of the "discovery" standard prescribed by § 13 to limit actions brought under § 12(2) of the 1933 Act. Thus, the running of both statutes of limitations is triggered by identical considerations. *Cf.* 3 A. Bromberg, Securities Law § 8.4(654) (1977).

The trial court placed the burden of proof on the defendants to show that plaintiffs had failed to comply with the statutory period of limitations under § 12(2) and § 10(b). We hold that this was error. The burden of showing compliance with the § 12(2) statutory period of limitations rests on the plaintiffs. Loss states:

> [I]t is the general rule in the federal courts that, when the very statute which creates the cause of action also contains a limitation period, the statute of limitations not only bars the remedy but also destroys the liability, and therefore the plaintiff must plead and prove facts showing that he is within the statute. This view has been consistently followed under the Securities Act.

3 L. Loss, *supra* ch. 11C(1)(f)(ii), at 1744 (footnotes omitted).

*See also Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Deckert,* 123 F.2d 979, 985 (3d Cir. 1941); *Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D.Pa.1975). Similarly, the federal courts have placed the burden of proof on the plaintiffs when questions of limitations arise under § 10(b) once the defendant has pleaded the statute of limitations. *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974); *Morgan v. Koch,* 419 F.2d 993 (7th Cir. 1969). *See also Schaefer v. First National Bank,* 509 F.2d 1287, 1297 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Arneil v. Ramsey, supra. Cf. Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594 (4th Cir. 1976) (Interstate Land Sales Full Disclosure Act suit); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir. 1975) (antitrust action).

The culpable omissions of both Weiss and Pritchard relate to a poor financial picture for prospective and continued investment in Avien. The issue thus becomes whether or not the plaintiffs, after discovering that information relating to the financial picture of Avien was withheld, filed their actions within the applicable periods of limitations. For the reasons set forth below we hold that the plaintiffs are barred under the one year limitations period of § 13 from maintaining their § 12(2) suit, but remand to the district court for a further inquiry into the question of whether the § 10(b) two year period had run.

Collectively, plaintiffs had been led to believe that Avien had a "rosy" future; some had been assured that they would double their money in a short while. In late 1968 all of the buyers were notified of Avien's annual stockholders' meeting. Conte and Consiglio attended the meeting which was held on December 9, 1968.[21] At the meeting Weiss discussed Davis-Edwards' ongoing problems and indicated that

---

21. Pritchard urges that under New York law all of the purchasers should be held to have been placed on notice of what went on at the stockholders' meeting in December of 1968 in which Conte and Consiglio participated. *See, e. g., Kranich v. Bach,* 209 A.D. 52, 204 N.Y.S. 320 (1924); *Planten v. National Nassau Bank of New York,* 174 A.D. 254, 160 N.Y.S. 297 (1916), *aff'd,* 220 N.Y. 677, 116 N.E. 1070 (1917). We need not decide this case on so inflexible a rule. We do, however, hold that failure to attend the meeting was at least one denigrating factor in evaluating Cook, Lowe and Eydenberg's alleged exercise of reasonable diligence.

earnings would be "anemic." [22] Following the stockholders' meeting Consiglio decided, on the basis of what he had heard, to sue Avien. However, as the record shows, he did not do so until August 24, 1971.

In early December of 1968, a financial report covering the 1968 fiscal year was sent to all of the purchasers. The statement was uncertified because of the accountant's uncertainty about Davis-Edwards' inventories.

By mid-February of 1969, Avien's six month interim report for fiscal 1969 was released. The report showed a loss of over $120,000 for the six months ending December 29, 1968.[23] Avien's third quarter report, released in May of 1969, indicated losses for the nine months ending on March 30, 1969, in excess of $249,000. Profits had been reported prior to the second and third quarter losses.

The closing financial statement of 1969 showed a loss as of June 30, 1969, of $987,300 as compared to $150,855 profit in 1968. The 1969 financial statement was released in November of 1969.

Avien stock achieved its highest market price in January of 1969 when it sold at 11.1. Although the stock had risen substantially in value over the preceding year, after February of 1969 the stock steadily declined. However, the market shows that it fluctuated back and forth without a precipitous drop until later in the year. Nevertheless, after December 1969, Avien never traded over 4, marking a low point of 1.3 in May of 1970. Trading in Avien stock was suspended in December 1970. In the spring of 1969 Conte, noting that the stock had begun to fall, asked Pritchard to convert the notes "as long as the stock was up."

Despite strong indications as early as December of 1968 that the company was experiencing severe losses, Cook and Lowe waited until March 23, 1971, to file their actions. Eydenberg and Advance Coatings Company did not file until May 27, 1971, while Conte and Consiglio filed on August 24, 1971.

Once the "inquiry notice" of possible omissions provided by the above facts had triggered the duty to exercise reasonable diligence, the statutory period did not "await appellant's leisurely discovery of the full details of the alleged scheme." *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970). *See also Goldstandt v. Bear, Stearns & Co.,* 522 F.2d 1265, 1269 (7th Cir. 1975); *Morgan v. Koch, supra.*

■ In determining whether an investor has made reasonable inquiries [24] a court must consider, inter alia, the nature of the misleading statements alleged, the opportu-

---

**22.** Consiglio said in his deposition that everyone was "apprehensive" about Avien's future at the meeting. He stated that the picture was not as good as he had been presented with earlier:

> I learned it at the stockholders' meeting by my feeling of improper omissions and omissions of what this company was construed to be and solicited to me to be, and if I knew all the facts as were presented at the stockholders' meeting, I would never have bought the stock. I think it was misrepresented.

. . . . .

> Q. It says in paragraph 17 that "Subsequent to the purchase of the Note by the Plaintiff, the Defendants fraudulently concealed material facts from the Plaintiff . . ." When was it that you first learned of this fraudulent concealment?
> A. After I went to the stockholders' meeting.
> Q. Was it at or after?
> A. At the . . .
> Q. At the stockholders' meeting, you learned?
> A. Right.

**23.** Weiss noted and explained the loss in the report:

> While consolidated sales volume in the second quarter increased to $1,467,561, a 12% increase over the first quarter, profitability declined substantially due to a number of unavoidable factors. Foremost among these was substantially increased costs in many areas affecting Davis-Edwards Pharmacal, our wholly-owned subsidiary.

**24.** The ordinary investor's due diligence burden may in fact go beyond the duty to make a reasonable inquiry. An investor may also be required to "apply his common sense to the facts that are given to him" in determining whether further investigation is needed. *See* Note, *The Due Diligence Requirement for Plaintiffs Under Rule 10b–5,* 1975 Duke L.J. 753, 779.

nity to discover the misleading nature of the statements, and the subsequent actions of the parties.[25] *Cf. Hupp v. Gray, supra* (Rule 10b–5 case);[26] *Morgan v. Koch, supra* 419 F.2d at 997 (Rule 10b–5 case).

Although the question of whether reasonable diligence has been exercised is factually based, we conclude that the actual determination is a sufficiently mixed question of law and fact to permit an appellate court to resolve the issue at least where the action below was tried to the court.[27] In *Dale v. Rosenfeld,* 229 F.2d 855 (2d Cir. 1956), a case tried to the court, Judge Swan wrote that:

> The defendants argue that the issue of "reasonable diligence" is one of fact and we must accept Judge Ryan's finding because it is not clearly erroneous. But we do not agree that it was a finding of fact; it set a standard of conduct *pro hac vice,*

and the standard so set was erroneous; hence we may reverse it.

*Id.* at 858.

Even assuming the question of reasonable diligence is ordinarily to be decided by the trier of fact, where no conflicting inferences can be drawn from the testimony an appeals court may make its own determination on reasonable diligence. *Newman v. Prior,* 518 F.2d 97, 100–01 (4th Cir. 1975).[28]

As the record makes clear, Avien's serious financial difficulties, in direct conflict with what plaintiffs complain they were led to believe, were unquestionably apparent by the end of 1969 and may have been obvious by March of 1969. The financial data available to the purchasers provided them with sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in

---

25. In this regard Chief Judge Leahy cogently observed:

> What on the one hand is tantamount to an actual discovery of fraud should not be confused with what on the other carries a duty to investigate. It is impossible to lay down any general rule as to the amount of evidence or number or nature of evidential facts admitting discovery of fraud. But, facts in the sense of indisputable proof or any proof at all, are different from facts calculated to excite inquiry which impose a duty of reasonable diligence and which, if pursued, would disclose the fraud. Facts in the latter sense merely constitute objects of direct experience and, as such, may comprise rumors or vague charges if of sufficient substance to arouse suspicion. Thus, the duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, position in the industry, sophistication and expertise in the financial community, and knowledge of related proceedings.

*Tobacco & Allied Stocks v. Transamerica Corp.,* 143 F.Supp. 323, 331 (D.Del.1956), *aff'd,* 244 F.2d 902 (3d Cir. 1957).

26. In *Hupp* plaintiff filed suit alleging misrepresentations and omissions in the sale of certain securities. The seller had represented that the securities would increase in value from $47 to $75 "at an early date." The prediction was, however, wrong and plaintiff eventually sold the securities for $17.50 per share. In discussing whether plaintiff had exercised reasonable diligence in discovering the alleged misrepre-

sentations and omissions the Seventh Circuit noted that:

> Here, as indicated above, the fact which would have put a reasonable person on notice of the possibility of fraud, namely, the drastic fall in the market price, was not concealed from Hupp. In addition, Hupp admitted that, after March 1967, Gray made no further representations to him about Valic. Yet in his proposed amended complaint, Hupp again failed to indicate any steps he had taken to find out why Valic stock had failed so dismally to live up to Gray's representations. Hupp's conclusory assertion that he had been "lulled into a sense of security" by his fiduciary relationship with Gray is, moreover, not sufficient to invoke the doctrine of fraudulent concealment.

*Hupp v. Gray,* 500 F.2d 993, 997 (7th Cir. 1974) (footnote omitted).

27. It has been held that when the issue of reasonable diligence arises in a jury case, it is for the jury to decide whether reasonable diligence has been exercised. *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1131 (4th Cir. 1970), *reconsidered after remand,* 488 F.2d 912 (1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

28. The trial court did not address the limitations period for § 12(2); it erroneously placed the burden of proof with regard to the statutory period solely on defendants. No facts essential to our ruling on the statute are seriously disputed by the parties.

the sale of the notes. Despite the signs of financial difficulties, the only evidence purchasers presented to show they acted with reasonable diligence to discover any wrongdoing was a sketchy account of a June 2, 1970, meeting between Weiss and themselves.[29] The reasonable diligence standard required more. The storm warnings, absent a greater inquiry by the purchasers, were sufficient to initiate the running of the statute of limitations on this cause of action at least as of January 1, 1970.

To hold otherwise would permit the securities acts to be used as havens for speculation and a buffer against any investment loss. When faced with knowledge of a company's serious financial difficulty, an investor cannot be allowed to wait for market increases knowing that if growth does not take place the securities acts will provide the insurance against loss. Instead, the exercise of reasonable diligence requires an investor to be reasonably cognizant of financial developments relating to his investment, and mandates that early steps be taken to appraise those facts which come to the investor's attention. Although this principle is particularly true when the nondisclosed facts are negligently omitted, even where facts are fraudulently withheld a plaintiff cannot be allowed to ignore the economic status of his or her investment.

Since we find that no inferences conflicting with the conclusion that the purchasers have not exercised reasonable diligence in pursuing their § 12(2) claim can be drawn from the testimony, we hold that the purchasers have failed to carry their burden of proof that they exercised reasonable diligence in light of the information available to them. They were charged with inquiry at least by January 1, 1970. Thus, we hold that the one year statute of limitations in § 13 had run and bars all of the purchasers' § 12(2) claims.[30] But in view of the trial

court's error in assigning to Pritchard the burden of proof on the statute of limitations issue under § 10(b) and because of the closeness of the limitations question when measuring a two year period, we are unable to rule on the question as a matter of law. We therefore remand that issue for a further determination by the trial court. The court should exercise its discretion as to whether further evidentiary proceedings or argument is necessary.

The judgment entered against James F. Pritchard is reversed and remanded with directions to consider whether the statute of limitations has run on plaintiffs' § 10(b) claim. The judgments in favor of Pierre A. Alsina, Roy E. Marquardt, Robert A. Weaver, Jr., Robert A. Wiener, Leo A. Weiss, and Robert Weaver, Jr. & Associates are affirmed.

---

29. The only discussion of the June 2, 1970, meeting occurred in the cross-examination of Robert Weaver, a member of Avien's Board of Directors. There was no explanation of the nature of the meeting introduced at the trial.

30. Identical principles apply to bar plaintiffs' suit under § 17 of the 1933 Act, 15 U.S.C. § 77q. *Newman v. Prior,* 518 F.2d 97 (4th Cir. 1975); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972). *See Sackett v. Beaman,* 399 F.2d 884 (9th Cir. 1968).