OPINION OF THE COURT
Edward H. Lehner, J.
The principal question raised on the motions before the court is whether the terms of a will of a person who died owning all of a corporation’s shares can control the corporation’s current dividend policy.
The individual defendants move pursuant to CPLR 3211 (a) (7) to dismiss the complaint or, in the alternative, for summary judgment. Plaintiffs cross-move for partial summary judgment on their third and fourth causes of action.
The crux of this interfamily dispute is over the management of National Reprographics, Inc. (Reprographies), a subchapter S corporation which has 110 shares outstanding. Plaintiffs Lily B. Sheflan and Marcella Burnell have life estates in the income from 20 and 10 shares respectively pursuant to the will of Edwin J. Bernstein (the Will). Mr. Bernstein died in 1962 owning all of the shares of the corporation. Defendant *1019 Madeline Bernstein, a daughter-in-law of the testator, is the controlling shareholder, chairperson of the board of directors (the Board), and secretary and treasurer of the corporation. Solomon Magid, Madeline Bernstein’s son-in-law, is president and a member of the Board, and her daughter Nan Magid is also a Board member. The persons who possess the remainder interest in the shares of Sheflan and Burnell are Madeline Bernstein’s grandchildren.
In 1964 the directors and shareholders agreed that the previous policy of distributing 100% of corporate profits to shareholders was adversely affecting the company’s ability to grow, and thereafter the Board declared dividends that averaged approximately 60% of earnings.
The complaint asserts that while distribution of the percentage of profits as dividends declined, distribution to corporate executives in the form of salaries increased disproportionately. It is alleged that in 1989 the salaries of the officers totaled approximately $2,000,000, which was nearly 40% of corporate income, and that by September 1989 Reprographics had accumulated $9,698,942 in retained earnings.
The gravamen of the complaint is that plaintiff life tenants have been damaged by reason of (i) excessive salaries paid to the controlling shareholder and her daughter and son-in-law, and (ii) the failure of the Board to distribute all of the corporation’s earnings as dividends as purportedly required by the Will’s provision for the distribution of "income” to the life tenants from the shares bequeathed to them. It is asserted that as a consequence of the latter, the remainderpersons (the grandchildren of Madeline Bernstein) will subsequently receive tax-free income because plaintiffs, as shareholders of a subchapter S corporation with only a life interest, will have previously paid income tax on all of the profits as earned.
FIRST CAUSE OF ACTION
Here plaintiffs maintain that excessive compensation was paid to defendants Madeline Bernstein, Solomon Magid and Nan Magid, and judgment is sought against them and Board member Norma Hack (who is counsel to the corporation) in favor of Reprographics for restitution of the excess.
In response, the individual defendants point out that the salary and dividend policies were continually approved by Sheflan at the annual meetings of directors and shareholders until 1989 when she ceased being a Board member, and that *1020 Burnell failed to object to such policies although he regularly received the corporate minutes.
With regard to the defense that Sheflan ratified the policies of which she now complains, she states that she is now 82 years of age, suffers from "a severe memory loss”, but agrees that "it is possible that I did give the approval the individual defendants now claim I gave”. However, she maintains that she never intended to approve the matters which the corporate minutes show she voted in favor of at meetings which she attended.
Asserting a severe memory loss, but nonetheless overing a lack of intent to have approved the matters for which she voted, does not create a triable issue on the defense of ratification. With respect to coplaintiff Burnell, no affidavit is submitted by her, and thus no proof was offered that in any way contradicts defendants’ contention that her late husband regularly received the corporate minutes and that neither he nor she took any steps to object to the decisions of the Board prior to 1989.
A shareholder is estopped to challenge a corporate policy which he or she affirmatively approved, or of which the shareholder had knowledge but to which no objection was interposed. (See, Diamond v Diamond, 307 NY 263 [1954]; Kranich v Bach, 209 App Div 52 [1st Dept 1924]; Jacobson v VanRhyn, 127 AD2d 743 [2d Dept 1987]; Greenberg v Acme Folding Box Co., 84 Misc 2d 181 [Sup Ct, Kings County 1975]; Wellington Bull & Co. v Morris, 132 Misc 509, 513 [Sup Ct, NY County 1928].) The following from the opinion in Kranich v Bach (supra, at 54) is particularly relevant to the situation at bar: "Furthermore, it is to be noted that this is a family corporation, and it is a fair inference that the members knew each other intimately and presumably had a more intimate knowledge of the corporation and its affairs than would be the case in a large corporation where the stockholders are widely scattered and know nothing of what is transpiring. All of the stockholders are chargeable with notice of what takes place at meetings of the stockholders regularly convened, whether they appear or not”.
Thus the claims set forth in the first cause of action are dismissed except with respect to compensation approved in 1989 and thereafter. Sheflan was removed as a director in 1989, and specific objection to the salaries was raised by the proxies who attended the September 14, 1989 shareholders *1021 meeting on behalf of the plaintiffs. The reasonableness of the seemingly large compensation approved in 1989 raises a triable issue of fact, the estoppel with respect to prior years not being a bar to such claim.
SECOND AND THIRD CAUSES OF ACTION
In the second cause of action plaintiffs allege that by receiving and approving excess salaries, the individual defendants have reduced the income of the corporation, and thus converted moneys belonging to the plaintiffs.
In the third cause of action plaintiffs assert that under the terms of the Will the directors of the corporation had an obligation to annually distribute all earnings of the corporation, and request a judgment directing it to declare and pay to them as a dividend all undistributed earnings applicable to their shares.
Although shareholders of a closely held corporation may be able to enter into a binding agreement on future corporate dividend policy, a testator (or other grantor), even though the owner of all of the outstanding shares of a corporation, cannot by testamentary device, set a dividend policy for the board of directors elected subsequent to his death. Corporate policy cannot be run from the grave. A board has discretion, under the normal business judgment rule, in deciding the amount of any dividend to be declared, which judgment is subject to attack only if not exercised honestly and in good faith. (See, Gordon v Elliman, 306 NY 456, 459 [1954]; United States Trust Co. v Heye, 224 NY 242 [1918]; Kranich v Bach, supra; Nauss v Nauss Bros. Co., 195 App Div 318 [1st Dept 1921]; Tomasello v Trump, 30 Misc 2d 643 [Sup Ct, Queens County 1961].)
The situation here is not as in Matter of Adler (164 Misc 544 [Sur Ct, NY County 1937]) (relied upon by plaintiffs), where the fiduciaries under the testator’s will also served as the directors of a real estate corporation solely owned by him. Under those circumstances, and considering the fact that the "terms of [the] will indicate the intention of deceased to deal with the real estate in the corporation as though it were owned by him individually”, the court held that it had the power "through orders to the fiduciaries to direct corporate action by them to the extent necessary to adjust the respective rights of remaindermen and income beneficiaries and to the extent necessary to compel observance of the State’s policy *1022 against income accumulations” (supra, at 555). In the case at bar the controlling shareholders have no fiduciary responsibility under the Will, although they do have a fiduciary obligation to deal fairly with the minority. (See, Cashman v Petrie, 14 NY2d 426 [1964].)
Moreover, even if the terms of the Will were to govern current corporate dividend policy, the court would not interpret the Will in the manner advanced by plaintiffs, nor do the two other agreements referred to by them affect that conclusion. There is nothing in the Will to indicate that the testator intended the life beneficiaries to receive as "income” from the shares bequeathed anything other than what is normally meant by that term, to wit: the dividends declared thereon. (See, United States Trust Co. v Heye, supra; Matter of Mortimer, 12 Misc 2d 744 [Sur Ct, Westchester County 1958]; Matter of Bonbright, 186 Misc 172 [Sur Ct, Monroe County 1945].) In the latter case it was said (supra, at 175-176): "Commercial profits are primarily working capital until they be divided for distribution to the stockholders. They are not necessarily 'income’ * * * to a stockholder as against the corporation. * * * 'So long as the corporation holds it as a part of the corporate property, it is capital of the corporation, and the interest therein, represented by each share, is capital and not income of that share, as between the tenant for life and the remainderman’ ”,
Here, considering the nature of the interest owned by the plaintiffs and the fact that the remainderpersons are grandchildren of the controlling shareholder and thus stand to gain by reduced dividends, the court is required to examine closely the question of the good faith of the Board in setting a dividend policy that has resulted in retained earnings of close to $10,000,000. (See, Ochs v Maydole Hammer Co., 138 Misc 665 [Sup Ct, Chenango County 1930].) Thus, a triable issue is raised as to the good faith of the dividend decisions made since 1989, plaintiffs having ratified or acquiesced in the declarations made prior thereto for the reasons set forth above with respect to the claim for excess compensation.
However, a challenge for failure to declare a proper dividend must be made on behalf of the corporation. (See, Gordon v Elliman, supra; Bender v Ferro, 86 AD2d 12 [1st Dept 1982].)
Accordingly, the second and third causes of action are dismissed, with leave on the part of plaintiffs to amend the complaint, within 20 days of service of a copy of this order, to *1023 assert a derivative cause of action on behalf of the corporation for failure to declare a proper amount of dividends in 1989 and thereafter.
FOURTH CAUSE OF ACTION
The fourth cause of action is duplicative of the other causes of action, and is therefore dismissed.
In light of the above, plaintiffs’ motion for partial summary judgment is denied.