Arthur ABELSON and Irving Malis, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Maurice STRONG, et al., Defendants.

Civ. A. No. 85–0592–S.

MDL No. 584.

United States District Court,
D. Massachusetts.

June 5, 1986.

---

**29.** *See Bowsher v. Synar, supra; INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

Laurence G. Cetrulo, Burns & Levinson, Boston, Mass., for plaintiffs.

John A.D. Gilmore, Hill & Barlow, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SKINNER, District Judge.

Plaintiffs bring this class action to challenge actions by the defendants which allegedly inflated the value of defendant AZL Resources, Inc.'s ("AZL") stock in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, Section 1962 of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, M.G.L. c. 231, § 85J, and common law fiduciary duty. Plaintiffs purchased shares of AZL stock during the period in question. The individual defendants are officers, directors and shareholders of AZL. The corporate defendants other than AZL are two Swiss investment companies, Societe Generale Pour L'Energie et les Resources ("Sogener") and Credit Immobilier S.A. ("CI").[1]

Plaintiffs' claims arise from an alleged scheme to artificially inflate the price of AZL common stock. Briefly, it is alleged that during the period from April 1981 to March 1982, AZL desired additional capital to finance exploration and development of oil and gas properties in which it held an interest. To obtain this capital, defendants sought to increase the market interest in AZL stock and to raise its price. Throughout the period in question defendants Strong and AZL made misrepresentations to an investment advisor, Atlantic Financial Management ("Atlantic"), the principals of a broker-dealer, Tuton, DiIanni & Draizin, Inc. ("TD & D"), and other investors and advisors concerning potential acquisitions or mergers and, subsequently, a purchase of a substantial block of AZL stock. During October and November of 1981, Sogener, an entity controlled by Strong, and the individual defendants other than Strong sold AZL shares while in possession of material nonpublic information.

As a result of the manipulation, the price of AZL stock rose to a high of $32 per share on December 23, 1981 and then fell sharply, reaching a low of $4.62 per share on July 7, 1982. Plaintiffs acknowledge that they were not privy to misrepresentations made by AZL and Strong. Instead, they allege they purchased shares of AZL stock on the open market "during the period of the market manipulation".

Defendants Maurice Strong, Mel P. Melsheimer, Herman W. Van Loo and Tom F. Marsh now move to dismiss plaintiffs' amended complaint. Defendants AZL and Scott M. Spangler join in this motion and make additional arguments pertinent to their respective situations. Defendants argue that plaintiffs have failed to plead fraud with sufficient particularity, failed to state a claim, failed to bring suit within the period allowed by the statute of limitations and, with respect to defendant Spangler, failed to make timely service of process.

For the reasons given below, I conclude that the amended complaint must be dismissed with respect to all the defendants except Strong. Plaintiffs have failed to state a claim under § 10(b) or RICO gainst AZL, Melsheimer, Van Loo, Marsh or Spangler. Although plaintiffs have successfully pleaded § 10(b) and RICO claims against Strong, the § 10(b) claim is barred by the statute of limitations. As a result of these rulings, I lack jurisdiction over the pendant state law claims against the defendants other than Strong. Plaintiffs' claim against Strong under M.G.L. c. 231, § 85J also must be dismissed for failure to state a claim.[2]

---

1. The allegations concerning Sogener, CI and Leonard C. Hentsch are not discussed in this opinion as those defendants have not been served.

2. Defendant Spangler's contention that plaintiffs failed to make timely service is without merit. The affidavit of David S. Godkin establishes that plaintiffs had good cause for not serving Spangler within 120 days after the filing of the com-

**Compliance with Fed.R.Civ.P. 9(b).**

■ The individual defendants argue that all counts of the amended complaint must be dismissed because plaintiffs have not stated the circumstances constituting fraud with particularity, as required by Fed.R.Civ.P. 9(b). Specifically, defendants point out that plaintiffs have not pleaded the dates and circumstances of their purchases of AZL stock. Plaintiffs allege only that they purchased in excess of 1,600 shares during the period of market manipulation. Amended Complaint ("A.C.") ¶ 41. This allegation is sufficient to withstand challenge under Rule 9(b). The dates and circumstances of plaintiffs' purchases, while perhaps necessary to their insider trading claims, are not related to the fraudulent scheme alleged in the amended complaint. It is the fraud, and not plaintiffs' purchases, which must be stated with particularity.

AZL contends plaintiffs have failed to meet their obligation to allege with particularity the fraud perpetuated by each defendant. *Margaret Hall Foundation v. Atlantic Financial Management*, 572 F.Supp. 1475, 1481 (D.Mass.1983). Upon review of the amended complaint, I conclude that the acts constituting the alleged fraud and the potential bases for AZL's responsibility for these acts are pleaded with sufficient particularity.

However, the affirmative misrepresentations allegedly made by the individual defendants other than Strong have not been well pleaded. The amended complaint states that "[i]n connection with their sale of AZL stock [on specified dates]", these defendants "willfully made materially false and/or misleading statements". A.C. ¶ 66. This allegation does not comply with Fed.R. Civ.P. 9(b), which "requires specification of the time, place and content of an alleged false representation". *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980) (emphasis added)). Accordingly, any claim based on

these alleged misrepresentations must be dismissed.

**Count I: Claims under § 10(b) and Rule 10b–5.**

A. *Sufficiency of the Complaint.*

■ Defendants Marsh, Van Loo, Melsheimer and Spangler contend that plaintiffs' § 10(b) claims should be dismissed for failure to state a claim because plaintiffs fail to allege contemporaneous trading. These defendants and others are alleged to have sold shares of AZL stock while in possession of material, nonpublic information. The amended complaint clearly fails to state a claim for insider trading because plaintiffs do not allege that their purchases were contemporaneous with the alleged sales. *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94–95 (2d Cir. 1981); *Backman v. Polaroid Corp.*, 540 F.Supp. 667, 669–70 (D.Mass.1982).

■ However, plaintiffs do not rely on their unsuccessfully pleaded claim of insider trading. In their memorandum, they assert that defendants' sales were part of the scheme to inflate the price of AZL stock. The individual defendants initially argue that the amended complaint does not apprise the defendants of a "fraud on the market" claim. I disagree. *See* A.C. ¶ 67 ("defendants created a false market into which plaintiffs ... entered"); ¶ 41 (plaintiffs purchased shares "during the period of market manipulation"); ¶ 50 (as a result of the misrepresentations "the price of AZL stock was artificially inflated"). Indeed, defendant AZL so understood the amended complaint. *See* AZL's Memorandum in Support of Motion to Dismiss at 12. As plaintiffs have alleged both that they purchased securities during the period of market manipulation and that defendants made material misrepresentations which resulted in artificial inflation of the market price of AZL stock, they have sufficiently described such a claim. *See T.J. Raney & Sons v. Fort Cobb, Oklahoma Irrigation Fuel Authority*, 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied sub nom. Linde,*

plaint. Fed.R.Civ.P. 4(j). A hearing on costs     shall be held at the conclusion of the action.

*Thomson, Fairchild, Langworthy, Kohn & Van Dyke v. T.J. Raney & Sons, Inc.,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984).

The amended complaint candidly acknowledges that plaintiffs were not privy to the misrepresentations allegedly made by AZL and Strong. Defendants accordingly urge that the action be dismissed for failure to plead reliance, usually a necessary condition for recovery under § 10(b) for misrepresentations. *Janigan v. Taylor,* 344 F.2d 781, 785–86 (1st Cir.1965). Plaintiffs first assert they need not prove reliance because their claim is based on nondisclosures, in which case proof of materiality and an obligation to disclose is sufficient to state a cause of action. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *see Holmes v. Bateson,* 583 F.2d 542, 558 (1st Cir.1978). The omissions alleged here are of information "that AZL's prospects for obtaining substantial infusions of capital in order to exploit its oil and gas rights were poor". A.C. ¶ 64. This information was needed to correct the impression created by the series of misstatements alleged. The "presumption" of causation of *Affiliated Ute* does not apply where such positive statements exist because reliance may then be proven. *Wilson,* 648 F.2d at 93–94. As the gravamen of plaintiffs' claim is misrepresentation, reliance must be shown. *See Vervaecke v. Chiles, Heider & Co., Inc.,* 578 F.2d 713, 716–18 (8th Cir.1978); *Grossman v. Waste Management, Inc.,* 589 F.Supp. 395, 409–10 (N.D.Ill.1984).

However, the "fraud on the market" theory is specifically aimed at protecting open market purchasers like plaintiffs who did not directly rely on any representations regarding the stock. The rationale behind the theory has been described as follows:

> A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations. Requiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation. We decline to leave such open market purchasers unprotected. The statute and rule are designed to foster an expectation that securities markets are free from fraud—an expectation on which purchasers should be able to rely.

*Blackie v. Barrack,* 524 F.2d 891, 907 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Although no court in this circuit has explicitly adopted this theory, I conclude it constitutes a valid cause of action. *See generally, Lipton v. Documation, Inc.,* 734 F.2d 740, 742–748 (11th Cir.1984), *cert. denied sub nom. Peat, Marwick, Mitchell & Co. v. Lipton,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). Consequently, plaintiffs need not prove direct reliance on defendants' misrepresentations.

■ The fraud on the market theory does not require that the alleged misrepresentations be made to the public. Plaintiffs allege that defendants made misstatements to investment advisors, broker-dealers and institutional investors knowing that the statements would be relayed to others in the investment community. A.C. ¶ 30–34. Although not "public", such statements clearly may cause purchases of AZL shares, as alleged in A.C. ¶ 35, and a resulting price increase. *Cf. In re Digital Equipment Corp. Securities Litigation,* 601 F.Supp. 311, 314–15 (D.Mass.1984). I decline defendants' invitation to close, as a matter of public policy, the "tortuous evidentiary path" plaintiffs must follow to

show a causal connection between private misstatements and market price.

Whether the market for AZL stock was of the developed and open type in which market prices would reflect available information about the corporation is less clear. As described in the amended complaint, the market for AZL stock was thin and potentially volatile. *See* A.C. ¶ 28. Defendants argue that in such a market, it cannot be assumed the market price reflects available information and, accordingly, reliance on the market does not establish a causal link between the misstatements and plaintiffs' lost investment. *See Lipton,* 734 F.2d at 743 and sources cited; *In re LTV Securities Litigation,* 88 F.R.D. 134, 142–45 (N.D.Tex.1980). This contention raises factual issues concerning the nature of the market for AZL stock not appropriately resolved on a motion to dismiss.

■ The amended complaint thus states a claim, at least as to Strong. However, not all the individual defendants are implicated in the alleged scheme. Defendant Melsheimer is alleged to have made various statements in April, when the scheme began, A.C. ¶ 32, 33, but plaintiffs fail to allege the statements were made with the scienter required by *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). The other individual defendants, with the notable exception of Strong, are not alleged to have made any misrepresentations other than those referred to in such conclusory terms that the allegations fail to meet the particularity requirement of Fed.R.Civ.P. 9(b). Without such misrepresentations, the claim against these defendants must be dismissed unless the act of selling AZL stock while in possession of material, nonpublic information is sufficient to provide a basis for a claim of a fraud on the market.

In essence, plaintiffs attempt to extend the principles of liability for insider trading to hold these defendants liable for manipulating the market. This they may not do. Insiders are liable to those who trade contemporaneously with them when they violate the duty to disclose or abstain. This duty arises from the fiduciary relationship between a corporate insider and a shareholder. *Chiarella v. United States,* 445 U.S. 222, 226–30, 100 S.Ct. 1108, 1113–16, 63 L.Ed.2d 348 (1980). Before an insider may be held liable for breach of this duty, however, it must be shown that he acted with scienter. *S.E.C. v. MacDonald,* 699 F.2d 47, 50 (1st Cir.1983) (scienter present when defendant knew information was undisclosed and material). Plaintiffs have arguably alleged that the defendants had the scienter required for an insider trading violation. *See* A.C. ¶ 70. However, they do not allege that the individual defendants other than Strong had scienter with respect to the scheme to manipulate the market. Without such an allegation, the narrow liability to contemporaneous traders imposed on insiders who trade on undisclosed material information cannot be expanded to include liability to all those who traded during the period of market manipulation.

Plaintiffs argue that the sales by the individual defendants and Sogener in fact assisted the manipulation by fueling the market for AZL stock. Without such sales, they contend, the market price could not have continued to rise in response to Strong's misrepresentations because Atlantic and other investors would have run out of stock to purchase. *See* A.C. ¶¶ 49, 51. Whatever the merits of this theory, it is grounded on violation of the duty not to assist in manipulating the market, not the duty to disclose or abstain. To be subject to liability under this theory, therefore, defendants must have possessed scienter with respect to the manipulation. In the absence of allegations to this effect, the individual defendants cannot be held liable under a fraud on the market theory. Accordingly, the claims in Count I against defendants Melsheimer, Van Loo, Marsh and Spangler must be dismissed.

■ AZL contends that the § 10(b) claims against it should be dismissed despite plaintiffs' successful pleading of a fraud on the market claim because the theory of apparent authority does not apply where there is no direct reliance on an

individual defendant's apparent authority. I agree. AZL is presently a defendant in the consolidated actions because plaintiffs have alleged reliance on Strong's apparent authority as chairman of AZL. *See Benjamin Slomoff v. Maurice Strong, et al.,* C.A. No. 83–4032–S, slip op. at 3–6 (D.Mass. January 7, 1985)[3] [Available on WESTLAW, DCTU database], *aff'd sub nom. In re Atlantic Financial Management, Inc. Securities Litigation,* 784 F.2d 29 (1st Cir.1986), *petition for cert. filed,* 54 U.S.L.W. 3779 (May 19, 1986) (No. 85–1877). The plaintiffs in this case differ from those in *Slomoff* because they were not aware of Strong's position or misrepresentations. As a result, they may not hold AZL liable for Strong's misrepresentations on a theory of apparent authority.

"Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized." *Restatement (Second) of Agency* § 265, comment a; *see id.* § 8. Plaintiffs contend that the market's reliance on Strong's apparent authority is sufficient to state a claim. However, they do not cite any precedent which supports this position. I conclude that apparent authority exists only where the third person is actually aware of the agent's position. *See id.* § 8, comments c and e. This result comports with the rationale for imposing vicarious liability on this theory: "that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him". *Id.* § 261; *see Atlantic Financial Management,* 784 F.2d at 32. Contrary to plaintiff's assertion, this conclusion does not "wipe out all recovery based on a fraud on the market concept". Plaintiffs' Memorandum at 28. Rather, it places primary liability upon those who perpetuate a fraud and restricts corporate liability to situations where the corporation benefits from the fraud. Accordingly, Count I must also be dismissed as against AZL.

### B.   *Statute of Limitations.*

Defendants argue that plaintiffs' § 10(b) and Rule 10b–5 claims should be dismissed because they are barred by the statute of limitations. They point to the fact that the last misrepresentation complained of took place in February of 1982, while the complaint in this action was filed on February 7, 1985.

■   Section 10(b) does not prescribe a limitations period. To determine the appropriate period under § 10(b) and its correlative rule, courts look to the "limitations period applicable to the analogous cause of action under state law". *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1st Cir.1978). The Court of Appeals for the First Circuit has held that the three year period for certain personal tort suits provided by M.G.L. c. 260, § 2A, governs securities fraud actions. *Id.* n. 20; *see Janigan v. Taylor,* 344 F.2d 781, 783 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). Defendants argue, however, that the two year limitations period of § 410 of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, applies. They note that the Act did not take effect until November 1, 1972, after the cause of action in *Cook* arose. St. 1972, c. 694, § 9. Prior to the enact-

---

**3.** In that opinion and an earlier ruling dated July 31, 1984, I determined plaintiffs could not hold AZL liable for Strong's actions on a *respondeat superior* theory because they had not alleged any benefit to AZL. *See Holmes v. Bateson,* 583 F.2d 542, 561 (1st Cir.1978). Plaintiffs had suggested that the scheme to inflate the price of AZL stock would benefit the corporation by increasing the proceeds from a sale or pledge of AZL stock or assuring a more favorable exchange ratio in any stock-for-stock merger or acquisition of a company possessing capital for development of AZL's properties. The complaint in *Slomoff* did not allege that merger discussions occurred, only that Strong's representations about discussions were "materially false and/or misleading". I concluded that plaintiffs had not pleaded any benefit to AZL. Plaintiffs in the instant action assert the same benefit to AZL but argue that merger discussions took place. However, the amended complaint only refers to Strong's "materially false and/or misleading" representations that discussions were being held. In the absence of allegations of actual discussions, the amended complaint fails to allege any benefit to AZL. *Respondeat superior* is accordingly inapplicable.

ment of the Act, there was no state statutory remedy analogous to § 10(b) or Rule 10b–5; Massachusetts only provided a remedy relating to sale of unregistered securities similar to § 12(1) of the Securities Act of 1933. *See* former M.G.L. c. 110A, §§ 6, 18. Consequently, the issue of the applicability of the Massachusetts Blue Sky law statute of limitations was not addressed in *Cook* because no state statute regulated the behavior being challenged. *See Salgado v. Piedmont Capital Corp.*, 534 F.Supp. 938, 947 n. 9 (D.P.R.1981).

Section 410(a)(2) of M.G.L. c. 110A now provides:

> (a) Any person who ... (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission ... is liable ...

Although this section does not forbid the use of a "manipulative or deceptive device or contrivance" as does § 10(b), it prohibits the use of one of these devices in language closely related to that of Rule 10b–5:

> It shall be unlawful for any person ... (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...

17 C.F.R. § 240.10b–5. However, mere similarity of language does not determine whether § 410(a)(2) is the state cause of action most analogous to § 10(b) and Rule 10b–5, especially as the language of § 410(a)(2) is more directly derived from § 12(2) of the Securities Act of 1933. 15 U.S.C. § 77l(2).

The essential elements of a § 10(b) and Rule 10b–5 action are "scienter, material omissions and/or misrepresentations, reliance, and due care by the plaintiff". *Holmes v. Bateson*, 583 F.2d 542, 551 (1st Cir.1978) (footnote omitted). The question is whether common law fraud or § 410(a)(2)

bears the closest substantive relation to this claim.

The statutory and common law actions are akin in that both require reliance on a material misrepresentation or omission. To recover for deceit under Massachusetts law, a plaintiff must show

> that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.

*Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir.1984) (quoting *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867, 868 (1963)). Although this statement neglects the possibility of liability in deceit for omissions, partial disclosures and half truths may be considered tantamount to misrepresentations of fact, *id.* at 5 (citing *Kannovos v. Annino*, 356 Mass. 42, 247 N.E.2d 708, 7811–12 (1969)). Section 410(a)(2), quoted above, specifically permits liability to be based on either an untrue statement of material fact or an omission necessary to prevent statements made from being misleading. Although the statute does not explicitly require the reliance necessary to a fraud action, *Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674, 677 (1983), it speaks of selling "by means of" misrepresentations or omissions, which is equivalent. Thus, to recover under § 410(a)(2) or for common law fraud, a plaintiff must prove that he relied upon a material misrepresentation or omission.

The two causes of action differ with respect to scienter, which is a necessary element of a § 10(b) or Rule 10b–5 action. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Fraudulent intent is required in a fraud suit, *see Ditmore*, 729 F.2d at 5, but not in an action under § 410(a)(2). Negligence will suffice to support liability under the statute.

The other potentially significant distinctions between the statute and common law fraud lie in the statute's apparent require-

ment of immediate purchaser-seller privity and limitation of statutory liability to the seller. Section 410(a)(2) provides that a seller "is liable to the purchaser buying the security from him". Of course, either a purchaser or seller may be liable under § 10(b) and Rule 10b–5. The same is true under the common law of deceit. *See Stewart v. Joyce,* 201 Mass. 301, 87 N.E. 613 (1909); *cf. Orlando v. Ottaviani,* 337 Mass. 157, 148 N.E.2d 373 (1958) (purchaser liable to optionees). However, the common law action is broader than that implied under § 10(b) and Rule 10b–5, which is limited to actual purchasers or sellers. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). A direct purchaser-seller relationship is required by § 410(a)(2) but is not necessary at common law. *Holloway v. Forsyth,* 226 Mass. 358, 115 N.E. 483 (1917) (plaintiffs who refrained from selling in reliance on defendant's misrepresentations state a claim).

These distinguishing features do not compel resort to the statute of limitations applicable to common law fraud actions. Where the state law providing for an express private cause of action prohibits the same conduct as the federal statute supporting an implied cause of action, *i.e.,* fraud in securities transactions, and serves the same policy, *i.e.,* preventing such fraud, the state statute is clearly more analogous to the federal cause of action than the multiform concept of common law fraud. *See White v. Sanders,* 650 F.2d 627, 630–32 (5th Cir.1981); *O'Hara v. Kovens,* 625 F.2d 15, 17–18 (4th Cir.1980); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413–14 (D.C. Cir.1977). Accordingly, I hold that the statute of limitations applicable to plaintiffs' claims for violations of § 10(b) and Rule 10b–5 is that governing actions under M.G.L. c. 110A, § 410(a). *See generally, Salgado,* 534 F.Supp. at 945–48 (concerning Puerto Rico Uniform Securities Act).

■ Section 410(e) of M.G.L. c. 110A provides that "[n]o person may sue under this section more than two years after the contract of sale". Thus, the limitations period for plaintiffs' § 10(b) and Rule 10b–5 claim is two years. However, while state law is used to determine the length of the statutory period, federal law determines when the period begins to run. *Cook,* 573 F.2d at 694. A cause of action under § 10(b) or Rule 10b–5 accrues "at the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains". *Id.* at 695. The duty to exercise reasonable diligence is triggered by events which should lead plaintiffs to suspect the existence of fraud. *Id.* at 696; *see Downey v. Vernitron Corp.,* 559 F.Supp. 1081, 1087 (D.Mass.1982). In this case, plaintiffs were placed on inquiry notice by the sharp drop in the price of AZL stock. According to the amended complaint, the price of a share of AZL stock attained a high of $32 on December 23, 1981 and then fell sharply, reaching $16.50 on February 9, 1982 and a low of $4.62 on July 7, 1982. A.C. ¶¶ 58, 60. Certainly by this latter date, plaintiffs' suspicions or curiosity should have been aroused. *Cf. Hupp v. Gray,* 500 F.2d 993, 996–97 (7th Cir.1974) (drop from $47 to $17.50 per share provides inquiry notice).

Once the plaintiffs were on inquiry notice of the possible fraud, they had a duty to exercise reasonable diligence. *Cook,* 573 F.2d at 696. In the absence of reasonable inquiry, the "storm warnings" constituting inquiry notice will start the running of the statute of limitations. *Id.* at 698. As exactly two and one-half years elapsed between the last possible date of inquiry notice and the filing of this action on February 7, 1985, plaintiffs bear the burden of proving that they failed to discover the fraud despite reasonable inquiry until at least February 7, 1983. Whether plaintiffs fulfilled their duty depends upon various factors, including the nature of the fraud, the opportunity to discover the fraud and the subsequent actions of the parties. *Downey,* 559 F.Supp. at 1087–88.

■ Plaintiffs have not pleaded any facts which would indicate that they exercised reasonable diligence. They argue that they need not do so because the mere

allegation of defendants' scheme to defraud investors is sufficient to avail themselves of the equitable tolling doctrine of fraudulent concealment. However, this doctrine applies only if (1) the defendant engaged in fraud or deliberate concealment of material facts relating to his wrongdoing, and (2) the plaintiff failed to discover these facts within the limitations period despite his exercise of due diligence. *Demars v. General Dynamics Corp.*, 779 F.2d 95, 97 (1st Cir.1985); *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 101 (1st Cir.1979). It is plaintiffs' burden to show compliance with the statute of limitations. *Cook*, 573 F.2d at 695. In light of the facts pleaded in the amended complaint, plaintiffs would have to prove reasonable diligence to succeed. As they have not pleaded any facts which would support such a finding, their § 10(b) and Rule 10b–5 count fails to state a claim on which relief may be granted. Accordingly, defendants' motions to dismiss Count I are ALLOWED.

**Count II: RICO Violations.**

There are four elements to a claim under § 1964(c) of RICO, which provides a civil remedy for violations of § 1962. A defendant must be alleged to be (1) a person (2) employed by or associated with an enterprise affecting interstate commerce (3) who has conducted the affairs of the enterprise (4) through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Plaintiffs allege AZL, Sogener and the individual defendants conducted the affairs of an enterprise through a pattern of racketeering activity consisting of the acts of securities fraud detailed in the § 10(b) claim. A.C. ¶¶ 82–85. The "enterprise" consists, alternatively, of (1) AZL, (2) an association of AZL, the individual defendants and Sogener, or (3) the same plus CI. Plaintiffs conclude by alleging that they were injured in their property or business by the § 1962(c) violation.

■ Defendants first challenge the sufficiency of the various enterprises. To constitute a RICO "enterprise", the associated persons must function as a "continuing unit" for a common purpose. Furthermore, the enterprise must have an existence "separate and apart from the pattern of activity in which it engages". *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981). These conditions have not been satisfied with respect to the groups of individual and corporate defendants comprising the second and third of plaintiffs' suggested enterprises. Nowhere in the amended complaint do the plaintiffs allege the individual defendants other than Strong were aware of the scheme to inflate the price of AZL's stock. Accordingly, these two proposed enterprises are not sufficient.

■ Plaintiffs also allege that AZL is an "enterprise". This allegation is sufficient because the corporation meets the *Turkette* requirements. However, AZL itself may not be held liable on this theory. "RICO quite clearly envisions a relationship between a 'person' [the defendant conducting the affairs of an enterprise through a pattern of racketeering activity] and an 'enterprise' as an element of an offense." *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F.Supp. 1125, 1135–36 (D.Mass.1982). Accordingly, a corporation cannot constitute the "enterprise" and simultaneously be the "person" liable under § 1962(c) for conducting the affairs of the enterprise through a pattern of racketeering activity. *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir.1985) (citing cases), *cert. denied*, —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *but see United States v. Hartley*, 678 F.2d 961, 988 (11th Cir. 1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). As AZL is a named defendant in the RICO count, it would appear plaintiffs improperly seek to hold it liable as a "person" while also relying on it as the "enterprise". Plaintiffs, however, propose a different theory of liability. They suggest that AZL is liable not as a "person" under § 1962(c) but as a principal whose agents have violated § 1962(c).

In determining whether to hold the corporation liable for the acts of its employees in violation of § 1962(c), the central inquiry is whether application of the doctrines of *respondeat superior* and apparent authority is consistent with the intent behind the statute. *American Society of M.E.'s v. Hydrolevel Corp.*, 456 U.S. 556, 569–70, 102 S.Ct. 1935, 1944–45, 72 L.Ed.2d 330 (1982); *see Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1083 (D.Del.1984). As noted above, the language of § 1962(c) indicates an intent to distinguish between the person liable and the enterprise with which he is associated. This distinction accords with one of the congressional purposes in enacting RICO: to prevent the takeover or infiltration of legitimate businesses by criminals and corrupt organizations. *See, e.g., B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 633–34 (3rd Cir.1984). By holding only the person liable, § 1962(c) focuses on the culpable party and "recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity". *Bennett*, 770 F.2d at 315. Accordingly, the RICO liability of the enterprise should depend on the role it played: victim, prize, instrument or perpetrator. *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd on other grounds,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam); *see* Blakey, *The RICO Civil Fraud Action in Context*, 58 Notre Dame Law 237, 306–25 (1982).

■ Application of the rules of agency, in particular the doctrine of apparent authority, would be inconsistent with this role-differentiated scheme of liability and is thus inappropriate. I agree with the Court of Appeals in *Haroco* that a corporation's responsibility for the acts of its agents should be determined under § 1962(a). 747 F.2d at 401–02; *see Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401–02 (7th Cir.1985). Section 1962(a) does not contain any of the language of § 1962(c) which indicates that the person liable and the enterprise must be separate. Under § 1962(a), therefore, a corporation may be liable as a person using the proceeds of a pattern of racketeering activity in its operations. *Id.* As the amended complaint does not allege that AZL received any income or proceeds from the scheme, Count II must be dismissed as against AZL.

■ For the individual defendants to be liable under § 1964(c), they must have conducted AZL's affairs through a pattern of racketeering activity. This requirement is clearly satisfied in regard to defendant Strong, who is alleged to have made a series of related misrepresentations, each of which may constitute a separate violation of the securities laws. *See Sedima S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985). However, the other individual defendants are not alleged to have known of this scheme. Plaintiffs only allege these defendants traded on inside information. Insider trading violations, standing alone, do not constitute conduct of AZL's affairs through a pattern of racketeering activity within the meaning of § 1962(c). The violations are simply unrelated to AZL's affairs. Accordingly, Count II must be dismissed with regard to defendants Spangler, Melsheimer, Van Loo and Marsh.

### Count III: Breach of Common Law Fiduciary Duty.

As plaintiffs' federal claims against Spangler, Melsheimer, Van Loo and Marsh must be dismissed for the reasons given above, the pendant state law claims against these defendants must also be dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The claim against Strong stands.

### Count IV: M.G.L. c. 231, § 85J.

■ Plaintiffs allege that all defendants except AZL violated M.G.L. c. 231, § 85J, in selling AZL stock. This claim must be dismissed as against Spangler, Melsheimer, Van Loo and Marsh for lack of jurisdiction. *United Mine Workers, supra.* Strong asserts that he is not liable under § 85J because he did not sell any stock to plaintiffs. The statute provides:

"Whoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him." As plaintiffs do not allege that Strong sold any AZL stock at all, his actions are not covered by the literal language of the statute.

Plaintiffs contend § 85J should be construed in a manner parallel to § 12 of the Securities Act of 1933, 15 U.S.C. § 77l, which covers people who "sell" a security. Liability under § 12 has been imposed not only on those who had title to a security but also on those whose participation in the transaction constituted a substantial factor in the sale. *E.g., Lewis v. Walston & Co., Inc.*, 487 F.2d 617, 621–22 (5th Cir.1973). This analogy does not avail plaintiffs because the two statutes have little in common. Section 85J provides treble damages in deceit or fraud actions involving the sale of personal property; § 12 provides absolute liability for sales of unregistered securities and creates a right to rescission or damages for sales of securities by negligent or fraudulent misrepresentations or omissions. If any Massachusetts statute were to be interpreted to accord with § 12, it should be M.G.L. c. 110A, § 410(a), which creates parallel state causes of action. Compare *Cady v. Murphy*, 113 F.2d 988 (1st Cir.) (broker liable under § 12(2)), *cert. denied*, 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458 (1940), with *Giordano v. Auditore*, 355 Mass. 254, 244 N.E.2d 555 (1969) (salesman liable under former M.G.L. c. 110A, § 18, precursor to § 410(a)(1)). To be liable under § 85J, a defendant must have actually sold personal property. *Margaret Hall Foundation v. Atlantic Financial Management*, 572 F.Supp. 1475, 1483 (D.Mass.1983) (brokers and investment advisors not liable under § 85J because they sell services, not personal property). Accordingly, plaintiffs fail to state a § 85J claim against Strong.

**Summary.**

The motions to dismiss of defendants AZL, Melsheimer, Van Loo, Marsh and Spangler are ALLOWED. Defendant Strong's motion to dismiss is ALLOWED as to Counts I and IV and is otherwise DENIED.