### In re ATLANTIC FINANCIAL MANAGEMENT, INC. SECURITIES LITIGATION.

### M.D.L. No. 584.

United States District Court, D. Massachusetts.

Dec. 8, 1988.

---

See also 718 F.Supp. 1012

Peter J. Schneider, Robert J. Cordy and Nancy L. Brush, Burns & Levinson, Boston, Mass., for plaintiffs.

Alvin K. Hellerstein and Alan M. Klinger, Stroock & Stroock & Lavan, New York City, and Jerome Gotkin, Gordon P. Katz and Robert L. Kirby, Jr., Widett, Slater & Goldman, P.C., Boston, Mass., for AZL in Margaret Hall II and Abelson.

James L. Ackerman, Sharon S. Tisher and Betsy G. Roberti, Day, Berry & Howard, Boston, Mass., for individual AZL defendants in Margaret Hall II and Strong in Abelson.

## MEMORANDUM AND ORDER ON AZL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

These consolidated class actions arose from an alleged scheme to inflate the price of defendant AZL Resources, Inc's ("AZL") stock, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.; Rule 10b–5, 17 C.F.R. § 240.10b–5; Section 1962 of the Racketeer and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq.; and common law fiduciary duty. The plaintiffs are all investors who lost money on the stock. AZL and certain individual officers and directors of the company ("the AZL defendants") now move for summary judgment on the 10b–5 claims in both the *Margaret Hall* and *Abelson* actions. In the alternative, defendants move for shortening of the class period.

The individual AZL defendants who join in this motion are Maurice F. Strong, Scott M. Spangler, Mel P. Melsheimer, Leonard C. Hentsch, Herman W. Van Loo and Tom F. Marsh. These individuals have each made a separate summary judgment motion as to the counts based on RICO, insider trading and breach of fiduciary duty. The motions of the five individual AZL defendants other than Strong are dealt with in a single order. Defendant Strong's motion is in a separate order.

### A. Factual and Procedural Background

The plaintiffs allege that during the period from April 1981 through the spring of 1982, AZL desired additional capital to finance exploration and development of oil and gas properties in which it had an interest. To obtain this capital, and to make AZL a more attractive partner for a merger, the AZL defendants embarked on a scheme to raise the market price of AZL stock. The scheme was carried out through misrepresentations by AZL insiders that AZL was on the brink of concluding a favorable merger agreement. Most of these statements were allegedy made by defendant Strong, AZL's Chairman of the Board, to Robert DiIanni ("DiIanni"), a principal of Atlantic Financial Management ("AFM"), an investment advisor whose purchases of AZL stock for himself and his clients helped to drive up the price. It is further alleged that other individual officers and directors of AZL furthered the market manipulation scheme and engaged in prohibited insider trading by selling their AZL stock in October–November 1981. The plaintiffs are all investors who purchased AZL stock during the period of the alleged manipulation, and lost money when the stock price collapsed in the spring and summer of 1982. The Abelson class action against the AZL defendants is brought on behalf of open market purchasers of AZL stock. The two Margaret Hall actions are brought on behalf of those individuals who were advisees of AFM, and lost money through its heavy investment in AZL stock on their behalf. In the first of these actions, the Margaret Hall class is suing AFM, DiIanni, two other directors of AFM, and certain other corporate entities who assisted in placing the investments ("the

AFM defendants").[1] In the second, the class is suing the AZL defendants. A subclass of Margaret Hall has been certified, consisting of AFM advisees for whom AZL stock was purchased at the same time as the individual AZL defendants were selling their stock. The subclass alleges certain individual AZL defendants engaged in prohibited insider trading.

The misrepresentations allegedly began in April of 1981, and continued through February of 1982. As a result of these statements, and DiIanni's enthusiastic patronage of AZL, the price of the stock rose to a high of $32.00 per share on December 23, 1981. When information became public that a favorable merger was not imminent, the stock fell sharply, hitting a low of $4.62 per share on July 7, 1982.

The AZL defendants' current summary judgment motion on the 10b–5 claims has two grounds. First, they contend that on the basis of undisputed material facts, plaintiffs cannot establish essential elements of a Rule 10b–5 violation. Second, they argue that one or both of the actions should be barred for failure to comply with the Statute of Limitations. Should they prevail on their summary judgment motion, defendants ask dismissal of the state law claims for lack of pendent jurisdiction. In the alternative, should they fail to secure summary judgment, defendants seek a shortening of the class period.

The *Abelson* plaintiffs have also put the Statute of Limitation in issue. They argue that a different limitations period, a longer one, should govern this action.

## B. *Failure to Establish Essential Elements of the 10b–5 Claim*

I can render judgment for defendants only if there is no genuine issue as to any material fact, defendants are entitled to judgment as a matter of law on the undisputed facts, or if the evidence most favorable to the plaintiffs will not support a finding for them as a matter of law. Defendants have asserted that based on what they claim are undisputed material facts, plaintiffs are unable to establish a violation of 10b–5 as a matter of law. They further argue that even if plaintiffs' version of the facts is correct, they cannot establish three necessary elements of a Rule 10b–5 action: falsity, materiality and justifiable reliance.

In support of their summary judgment motion, pursuant to Local Rule 18, defendants have submitted the following list of "undisputed material facts":

(a) that AZL was a speculative stock;

(b) that AZL, during the period September 1981–January 1982, was engaged in serious merger negotiations with Tesoro Petroleum Company ("Tesor") at the highest corporate level;

(c) that none of the AZL defendants stated at any time that AZL had agreed-on or completed a merger with Tesoro;

(d) that none of the AZL defendants made representations to Robert DiIanni ("DiIanni") or anyone else, that AZL had a merger in the works (or was close to completion of a merger) prior to September 21, 1981;

(e) that DiIanni, as an investor and an investment adviser, at all times knew that merger negotiations were tentative and that a merger was never final until completed;

(f) that DiIanni knew no later than January 24, 1982 that AZL would not be entering into a merger with Tesoro, then known to him as "Company X";

(g) that by no later than May 1982, DiIanni and Tuton believed that Strong had lied to them and otherwise failed to tell them the truth in their discussions of AZL's merger prospects; and

(h) that Arthur Abelson was informed in 1982, at least, by Sanford Ritter, that DiIanni and Tuton believed that Strong had lied to them regarding AZL's merger prospects.

Plaintiffs initially objected to the defendants' motion because it failed to conform to the requirements of Local Rule 18,

---

**1.** A fourth action, *Klebanoff v. Atlantic Financial Management, et al.,* involves an advisee of DiIanni personally, who was not formally a client of AFM, and so is not a member of the Margaret Hall class.

which requires inclusion of a "concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." Defendants then submitted an "amended statement" including record references. Defendants have not moved to substitute this statement for their original statement, but characterize it as available purely for the plaintiffs' convenience.

Insofar as it is based on the argument that "material facts" enumerated in their Rule 18 statement are not in dispute, the motion must fail. The listed "facts" are not established by the record references which defendant belatedly supplied. Further, the plaintiffs' responses and counter-designations make it clear that defendants' assertions are in genuine dispute. Finally, many of defendants' assertions are not facts, but conclusions, representing inferences defendants hope the finders of fact will draw.

Defendants maintain that even if they concede plaintiffs their version of the facts, the section 10(b) and Rule 10b–5 claims are insufficient as a matter of law because plaintiffs cannot demonstrate that representations by the AZL defendants regarding merger prospects were either false or material, or that DiIanni's reliance on them was reasonable.

The defendants assert that any representations allegedly made by them concerning merger negotiations cannot have been false and misleading within the meaning of Rule 10b–5, because AZL was actually exploring the possibility of merger with various companies. They further argue that because the statements were predictive, they cannot possess the requisite falsity to create liability. This is also the thrust of their arguments that plaintiffs cannot demonstrate materiality or justifiable reliance. In short, defendants argue that because merger discussions are inherently uncertain of completion, statements about merger prospects are obviously unreliable to any reasonable investor, regardless of their source, the manner of presentation, or how unjustifiably rosy their content. As such,

they would be legally insufficient to ground § 10(b) and Rule 10b–5 claims. In my opinion, this is not a correct statement of the law.

### 1. Materiality

 It is clear that misrepresentations about the current status of merger negotiations can be material for purposes of investor decision. *See e.g. Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In the case, Basic, Inc. made repeated public denials that it was engaged in merger negotiations. These statements turned out to have been false. The plaintiffs were former shareholders who sold at an artificially depressed price, after the company publicly denied the possibility of merger but before the eventual merger was announced. Plaintiffs claimed that the denials were material misrepresentations, which both depressed the market price and induced them to sell. The Court rejected a bright line test for the materiality of information concerning merger negotiations, in favor of a fact-based approach, to be determined on a case by case basis. It expressly adopted the standard of materiality set out in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) as that governing Rule 10b–5 actions. Under this test, materiality is a factual inquiry whose resolution is based on the significance a reasonable investor would place on the withheld or misrepresented information. *Basic, Inc., supra,* 108 S.Ct. at 987–988.

### 2. Falsity

 Statements regarding future events can be sufficiently inaccurate and misleading to be actionable under Rule 10b–5. *See e.g. Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 203 (5th Cir. 1988), *cert. denied* — U.S. ——, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Nothing in Rule 10b–5 exempts predictions from its reach, and false predictions which were not made in good faith and on a sound factual basis can create liability. *Isquith v. Middle South Utilities, Inc., supra,* 847 F.2d. 186, 204. The Supreme Court made plain

in *Basic, Inc. v. Levinson, supra,* that representation regarding merger negotiations are not categorically different from other statements or omissions for purposes of Rule 10b–5. I see no justification for a rule, that so long as merger negotiations have in fact been conducted, misleading representations about their progress or predictions about their outcome are permissible.

Defendants' reliance on *Augenstein v. McCormick & Co., Inc.,* 581 F.Supp. 452 (D.Md.1984) to support their position that statements concerning merger discussions cannot create Rule 10b–5 liability is misplaced. The statements at issue in *Augenstein* were made by corporate directors seeking to stave off a hostile takeover, and characterized a takeover attempt as against the interests of shareholders. The plaintiff's true quarrel with management was that they had deprived shareholders of the opportunity to profit from the tender offer. Her claim was in substance one of corporate mismanagement, cognizable under state corporate law, not federal securities law. Furthermore, the court noted, the only impact the statements could have had would be to depress the price of the stock and induce investors to sell. Since plaintiff purchased her shares after the statements were made, she could not have relied on them.

### 3. Reliance

■ Finally, the question of justifiable reliance is most appropriately left for the jury. Reasonableness of reliance involves all the elements of the transaction, and is rarely susceptible of summary disposition. *See e.g. In re Rexplore, Inc. Securities Litigation,* 671 F.Supp. 679, 684 (N.D.Cal. 1987). The context in which a representation was made, as well as the position of the utterer, can be relevant both to whether the statement was misleading and whether reliance on it was reasonable. *Isquith v. Middle South Utilities, Inc., supra,* 847 F.2d 186, 202–03. Statements designed to convey a false impression which are made by persons in management positions can mislead and induce reliance more easily by virtue of their source. *See e.g.*

*Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 164 (2d Cir.1980). It would be unrealistic to say that reasonable investors do not rely on information concerning contingent future events. That is precisely what they do rely on. "A reasonable, if speculative investor' would consider even the possible occurrence of an event of magnitude to be important." *S.E.C. v. MacDonald,* 699 F.2d 47, 50 (1st Cir.1983). In this action, most of the alleged misrepresentations were made by the chairman of the board of the company involved, and the event, a merger or acquisition, was one which investors indisputably would find important to investment decisions.

■ In short, I do not find that defendants have so clearly established that the section 10(b) and Rule 10b–5 claims are without merit as to justify summary judgment.

### C. Statute of Limitations

The Margaret Hall action against the AZL defendants was filed February 13, 1984. The Abelson action was filed February 7, 1985. Defendants earlier moved to dismiss the Abelson action based on the Statute of Limitations. In *Abelson v. Strong,* 644 F.Supp. 524 (D.Mass.1986), I granted the motion, holding that the applicable statute of limitations was two years and that the latest this period could have begun to run as to Abelson was July 7, 1982, which was the point at which AZL stock hit bottom. Since the action was filed after July 7, 1984, it was time barred. The two year limitations period is derived from the most closely analogous Massachusetts Blue Sky law, M.G.L., ch. 110A, § 410(a). Abelson then amended his complaint to allege that he had exercised due diligence in investigation of his claim. Since he set out sufficient facts to warrant tolling the Statute of Limitations under the doctrine of fraudulent concealment, I authorized reinstatement of the complaint.

Defendants now reassert their Statute of Limitations defense, on grounds both new and old to this case. First, they request me to reconsider my decision that the appli-

cable limitations period is two years, and instead impose a "one-year from discovery, three-years from transaction" rule. This would arguably time bar both Margaret Hall and Abelson rule 10b–5 claims. Alternatively, defendants argue that even under the two year period, the Abelson action should be dismissed because plaintiffs have failed to advance facts to justify tolling the statute.

Plaintiffs also argue for a different limitations period. They contend that both longstanding and recent decisions of the Court of Appeals for the First Circuit oblige me to apply a three year limitations period.

1. What Limitations Period Applies

Defendants ask that I reverse my prior decision to adopt the two year statute of limitations from Massachusetts' Blue Sky law and impose instead a "one year from discovery, three year from sale" limitations period, borrowed from the 1934 Securities Act. Using this period, both Abelson and Margaret Hall actions would arguably be time barred.

In my prior order, *Abelson v. Strong*, 644 F.Supp. 524 (D.Mass.1986), I followed the general rule in cases involving a federal statute which is silent as to the limitations period for private rights of action, and borrowed a statute of limitations from the most closely analogous state law. This practice is clearly the law of this circuit with regard to § 10(b) and Rule 10b–5 actions. *See e.g. Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 124 (1st Cir.1987); *General Builders Supply Co. v. River Hill Coal Venture*, 796 F.2d 8, 11 n. 3 (1st Cir.1986); *Cook v. Avien*, 573 F.2d 685, 694 (1st Cir.1978); *Janigan v. Taylor*, 344 F.2d 781 (1st Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). I held that the Massachusetts law most closely analogous to Rule 10b–5 actions is M.G.L. c. 110A, § 410(a), which forbids misleading statements or omissions in connection with the sale of securities, and sets a two year statute of limitations.

Defendants urge me to reconsider my decision as to the applicable statute of limi-

tations in light of recent decisions by the Supreme Court and the Court of Appeals for the Third Circuit which they say militate for a different rule. In *Agency Holding Corporation v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Court adopted a uniform four year statute of limitations for civil enforcement actions under RICO, 18 U.S.C. § 1964. Following that decision, and reasoning from it, the Court of Appeals for the Third Circuit abandoned its prior practice of borrowing from analogous state law limitations periods for § 10(b) and Rule 10b–5 actions, in favor of imposing a uniform federal limitations period. *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.1988), *cert. denied, sub nom., Vitiello v. I. Kahlowsky & Co.*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). That court decided to borrow the limitations period from those set out for most express causes of action under the Securities Exchange Act of 1934: one year after the plaintiff's discovery of facts constituting the violation, and in no case more than three years after the violation occurred. Defendants urge me to follow the lead of *Data Access* and to take the admittedly unprecedented step in the First Circuit of imposing the "one year from discovery, three years from sale" limitations period. This would mean reversing my prior determination in this action that a two year statute of limitations applies. *Abelson v. Strong, supra.* They further argue that this new rule should be applied retroactivity to the instant litigation, and should operate to bar plaintiffs' claims.

I am not persuaded that the Supreme Court's opinion in *Agency Holding Corp.*, impels the holding in *Data Access*, or that the Court of Appeals for the First Circuit inevitably will arrive at the same result. In *Agency Holding Corp.*, the Court did not endorse wholesale abandonment of the practice of deriving limitations periods for federal laws which do not provide them from analogous state laws. On the contrary, it made it clear that this practice remains the law in most cases. Only in limited circumstances is it more appropriate to borrow from federal statutes, and

the mere fact that state law does not provide a perfect analogy is "never itself sufficient to justify the use of a federal statute of limitations." *Agency Holding Corp., supra,* 107 S.Ct. 2759, 2763. The reason that the Court made an exception for civil RICO claims is the variety of substantive predicate offenses which can underly such actions. *id.* This is not the case with section 10(b) and Rule 10b–5 actions, which are all based on violations of securities law.

■ In any case, the current law of this circuit is clear. Limitations periods for § 10(b) and Rule 10b–5 actions are derived from analogous state law. *See e.g. Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 124 (1st Cir.1987); *General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 11 n. 3 (1st Cir.1986); *Cook v. Avien,* 573 F.2d 685, 694 (1st Cir.1978); *Janigan v. Taylor,* 344 F.2d 781 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). Until the Court of Appeals for the First Circuit decides to adopt a different rule, I am bound by its decisions. I find that the issue is sufficiently clear for decision without oral argument. Therefore, despite defendants' offer, there will be no need for Professor Loss to appear on their behalf.

Since I have declined to impose a shorter limitations period, there is no need to consider defendants' retroactivity argument.

The plaintiffs have also advanced a Statute of Limitations argument. They seek replacement of the period I imposed in *Abelson* with the three year period set in M.G.L. ch. 260, § 2A. This position has considerable support in the case law of this circuit, and I must give it serious consideration.

The Court of Appeals for the First Circuit has consistently held that in Massachusetts, the statute of limitations which governs claims under section 10(b) and Rule 10b–5 is to be derived from M.G.L. ch. 260, § 2A, which currently provides for a three year limitations period. *See e.g. Janigan v. Taylor,* 344 F.2d 781, 783 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1st Cir.1978); *General*

*Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 11 n. 3 (1st Cir.1986); *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 124 n. 2 (1st Cir.1987). When I held in *Abelson v. Strong,* 644 F.Supp. 524 (D.Mass.1986) that the limitations period should be drawn from M.G.L. ch. 110A, § 410, I did so believing that our court of appeals would agree that this relatively recent statute was the Massachusetts law most closely analogous to § 10(b). I expected then, and still expect that the court will so decide when the issue is clearly presented to it. Since I issued that order, however, the Court of Appeals for the First Circuit has twice referred to a three year limitations period for Rule 10b–5 actions. *See General Builders Supply Co., supra* and *Maggio, supra.* In neither case was the choice of limitations period critical to the decision or discussed by the court. The basic rule of this circuit is still to borrow the most analogous state statute of limitations. The fact that M.G.L., ch. 110A, § 410 has not yet been called to the attention of the Court of Appeals does not vitiate my duty to obey the court's underlying objective. Accordingly, my earlier ruling stands.

2. Equitable Tolling of the Statute in the Abelson Claims

■ Under the operative limitations period, the Abelson class action should be time barred, since it was filed well over two years after the latest date the plaintiffs should have been on notice that the alleged fraud may have occurred. The action has been permitted to proceed to this stage in the litigation because plaintiffs have asserted that their failure to comply with the statute is excused by the doctrine of fraudulent concealment. To invoke this doctrine and toll the statute, each plaintiff must establish that he or she failed to discover the operative facts that are the basis of the cause of action within the limitations period after exercising due diligence to investigate the claim. *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987). The doctrine operates to toll the statute of limitations when the party injured remains

in ignorance of the fraud even when the defendant invoking the statute committed no affirmative acts of concealment, as long as the plaintiff exercised due diligence. *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir.1978). The burden to establish that tolling is justified is on the plaintiffs. *id.*

Although defendants argue for adoption of a different rule, it is clear that in the First Circuit, the doctrine of fraudulent concealment is available even without affirmative acts on the part of the defendant, when the plaintiff has been unable to discover the alleged fraud despite the exercise of reasonable diligence. *Kennedy v. Josephthal & Company, Inc.*, 814 F.2d 798, 802 (1st Cir.1987); *Maggio, supra*, 824 F.2d 123, 128; *Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir.1978). Furthermore, the affirmative act of denying wrongdoing, which defendants' response to Abelson's letter may constitute, can be sufficient to invoke the doctrine. *Berkson v. Del Monte Corp.*, 743 F.2d 53, 56 (1st Cir.1984), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985). The First Circuit cases cited by the defendants to support a requirement that they have committed affirmative acts of fraud or concealment to toll the statute of limitations are not securities cases. In those cases, the underlying facts were not hidden, and the plaintiffs had failed to give any explanation for their tardiness or to allege facts to support due diligence. *See e.g. Berkson v. Del Monte Corp., supra*, 743 F.2d 53, 56. *Ramirez Morales v. Rosa Viera*, 815 F.2d 2 (1st Cir.1987); *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir.1979). In addition, the court of appeals pointed to the absence of a fiduciary relationship between the parties as reason to require plaintiffs to demonstrate that defendants had concealed their fraud by affirmative acts. *Berkson, supra*, 743 F.2d at 56; *Hernandez Jimenez, supra*, 604 F.2d at 102. In those actions in which there was a fiduciary relationship, as in this case, plaintiffs are required to show only that defendants remained silent when they had a duty to disclose. *Kennedy v. Rosenthal & Company, Inc., supra*, 814 F.2d at 802; *Cook v. Avien, Inc., supra*, 573 F.2d at 694.

Defendants have argued that Strong and AZL's public acknowledgment in February of 1982 that chances for immediate merger were slim establishes their lack of concealment of any fraud. But an admission in February 1982 that merger was problematic does not constitute a confession of the earlier misrepresentations alleged, or an admission that AZL was never on the brink of concluding a merger. The February public statements do not reveal facts which would generate suspicion of the alleged market manipulation scheme.

"[T]he determination of whether a plaintiff actually exercised reasonable diligence requires a more subjective inquiry focusing upon the circumstances of the particular case, including the existence of a fiduciary relationship, the nature of the fraud alleged, the opportunity to discover the fraud, and the subsequent actions of the defendants." *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987). Assuming that each plaintiff alleges facts to support such a finding, the exercise of reasonable diligence is a question of fact and not normally amenable to summary disposition. *See e.g. Kennedy v. Josephthal & Company, Inc.*, 814 F.2d 798, 803 (1st Cir.1987); *Cook v. Avien, Inc.*, 573 F.2d 685, 697 (1st Cir.1978). The determination of whether each plaintiff has exercised reasonable diligence sufficient to toll the statute should be decided by the fact finder. It would be particularly inappropriate to decide the issue by summary judgment, and on a class wide basis, when the class representative has alleged facts to support invocation of the doctrine.

In my prior order, I held that Abelson had alleged sufficient facts in support of tolling the statute of limitations for the class to survive summary dismissal on those grounds. I see no reason to reverse that decision now.

### D. Shortening the Abelson Class Period

The certified class period for both Margaret Hall and Abelson actions is April 1981 through February 1982. Defendants seek to shorten this period to commence

September 21, 1981 and end January 24, 1982. There are genuine and substantial disputes about the facts defendants rely on to justify shortening the class period.

The reason defendants give for setting the beginning of the period in September 1981 is their assertion that "there is no evidence whatsoever that, *prior to* September 21, 1981, any of the AZL defendants made any statements indicating a merger was in the works, much less close to completion." (AZL Defendants' Memorandum in Support of Their Motion for Summary Judgment on Margaret Hall and Abelson 10b–5 Claims, at p. 77) This characterization of the evidence is plainly wrong. According to DiIanni, the first representations to him that AZL was on the brink of a favorable merger, were made April 23, 1981 by defendant Melsheimer.

Defendants argue that the class period should end on January 24, 1982, fixing this as the point when DiIanni knew there would be no merger. Their basis for setting this date is a telephone conversation between Strong and DiIanni, in which, defendants contend, it became clear to DiIanni that there would be no merger. DiIanni's account of this and subsequent communications with defendants supports a different conclusion. According to DiIanni, Strong said during this conversation that AZL could "have a deal tomorrow," that Tesoro was still eager to consummate the merger, and that any delay in the deal was because Strong himself believed AZL was worth more than the current offer. DiIanni further stated that Melsheimer told him either one or two days later that the merger was still alive, and that the parties actually "had shaken hands on the deal." There is clearly a dispute of fact as to the substance of communications between DiIanni and the AZL defendants, and as to what DiIanni believed and when.

For the foregoing reasons, I have determined that there are material issues of fact in dispute which preclude summary judgment on the section 10(b) and Rule 10b–5 claims. I have also determined that defendants are not entitled to prevail on the Statute of Limitations. Finally, I find that defendants are not entitled to summary dismissal of the Abelson class at this point or to have the class period shortened.

Accordingly, defendants' motion is DENIED.